# WILLIAM JAMES HODNETT

## V.

# DAVID L. FRIEND, ET AL.

Record No. 840085

January 16, 1987

Present: Carrico, C.J., Compton, Stephenson, Russell, and Thomas, JJ.

*William B. Hopkins, Jr. (P. Brent Brown; Martin, Hopkins, Lemon & Carter, P.C.*, on briefs), for appellant.
*James F. Johnson; Richard C. Rakes (Thomas N. Key; Richard S. Phillips; Johnson, Ayers & Matthews; Gentry, Locke, Rakes & Moore*, on briefs), for appellees.

CARRICO, C.J., delivered the opinion of the Court.

In this negligence case, William James Hodnett was injured when the Volkswagen automobile in which he was riding was struck by a Chevrolet pickup operated by David L. Friend. David Jefferson Underwood, the driver of the Volkswagen, was also injured in the accident and later died from his injuries.

Hodnett instituted an action for damages against Friend and the personal representative of Underwood's estate. In a jury trial, the court struck Hodnett's evidence against Underwood's estate, and the jury returned a verdict in favor of Friend. The court entered judgment in favor of both defendants.

The accident occurred about 2:00 a.m. on February 19, 1982, at the intersection of Liberty and Williamson Roads in the City of Roanoke. Liberty Road, a two-lane street, runs generally east and west. Williamson Road, a four-lane thoroughfare, runs generally north and south. The intersection is controlled by a traffic light which "appeared to be working normally" on the night of the accident.

Hodnett and Underwood were proceeding in an easterly direction on Liberty Road en route to their place of employment. Approaching the Williamson Road intersection, Underwood slowed his car "almost [to] a stop" at the "stopbar" and "pulled up" behind a vehicle waiting for the light to change. When the "lead"

vehicle "proceeded on through the light," Underwood followed. Hodnett testified positively that the light was green when Underwood entered the intersection.

About the same time, Friend was traveling in a southerly direction in the inside southbound lane of Williamson Road. While still some distance from the Liberty Road intersection, Friend observed that the traffic light was red. He slowed his vehicle to a speed of 20 to 25 m.p.h., preparing to stop. The light changed from red to green when he was 40 to 60 feet away, and he accelerated and proceeded into the intersection. Friend was positive in his testimony that the light was green when he entered the intersection.

The Underwood vehicle had reached the "middle" of the intersection when, in Hodnett's words, "bam, there was a collision." The front of Friend's pickup struck the left middle and rear of Underwood's vehicle, knocking it approximately 100 feet into a parking lot on the east side of Williamson Road.

The evidence conflicted not only upon the question of which driver had the green light but also upon the subject of the ability of each driver to see the other. Hodnett testified that he did not see Friend before the collision because he was not looking to his left. He testified further, however, that when a motorist "pull[s] up to the stopbar" on Liberty Road, he can see to his left "up Williamson Road," the direction from which Friend was traveling, a distance of two blocks.* Hodnett established his familiarity with the area by saying he had traveled through the intersection many times over a period of 36 years, including numerous times with Underwood in the same car that was involved in the accident.

Friend, who was not questioned about his familiarity with the intersection, admitted he did not see Underwood's vehicle or any other car "the whole way down through there." Friend blamed his failure to "see anything" on the presence of a building located at the northwest corner of the intersection. Friend claimed the building constituted an "obstruction to visibility . . . at that intersection." He said "you can't see nothing for it."

The investigating police officer, called as a witness by Hodnett, said on cross-examination that he would classify the intersection in question as a "blind" one "if two vehicles were coming at the

---

* Underwood's estate assigns cross-error to the trial court's action in admitting Hodnett's testimony about the distance a motorist can see to his left from the "stopbar" on Liberty Road. In our opinion, this was not error.

same time." On redirect examination, however, the officer admitted that he would not so classify the intersection "if a car was coming up [Liberty Road] slowly, or almost stopped at the stop bar."

An analysis was made of Underwood's blood following the accident. The parties stipulated at trial that the test showed "a blood alcohol concentration of .20." An expert in toxicology, called as a witness by Hodnett, testified that a .20 concentration of alcohol in the blood adversely affects a person's vision, depth perception, judgment, and ability to respond to emergency situations.

It is undisputed that Hodnett did not know or have reason to know that Underwood had been drinking. Consequently, no question has been raised concerning Hodnett's possible contributory negligence or assumption of risk.

Hodnett has assigned two errors. The first presents the question whether the trial court erred in striking Hodnett's evidence against Underwood's estate, and the second challenges the court's refusal to grant an instruction placing upon Friend the duty of maintaining a proper lookout.

With respect to the case against Underwood's estate, Hodnett argues that he presented evidence showing that Underwood "was driving under the influence of alcohol and, therefore, was negligent." Hodnett also argues that his evidence showed Underwood "could have seen Friend's vehicle for approximately two blocks prior to entering the intersection," yet failed to stop or take "some other evasive action to avoid the collision." From this and other evidence, Hodnett maintains, a jury could reasonably conclude that Underwood's driving under the influence and failing to keep a proper lookout constituted negligence proximately causing Hodnett's injuries.

On the other hand, Underwood's estate points to Hodnett's testimony that the light was green when Underwood entered the intersection and that Hodnett observed nothing abnormal in either Underwood's driving or condition. Underwood's estate asserts that under the doctrine of *Massie* v. *Firmstone*, 134 Va. 450, 114 S.E. 652 (1922), Hodnett is bound by his testimony and precluded from contending that Underwood's driving or condition constituted evidence of negligence which was a proximate cause of Hodnett's injuries.

Underwood's estate is correct in saying Hodnett is bound by his testimony that the traffic light was green for Underwood. This

was a statement of fact, and Hodnett cannot expect "a court or jury to believe that he has not told the truth" in making the statement. *Id.* at 462, 114 S.E. at 656.

But Hodnett's statement that the light was green did not end his case against Underwood. In *Damron* v. *Hagy*, 220 Va. 455, 258 S.E.2d 517 (1979), we said:

> "[A] green light is [not] an unqualified command to a motorist to move in the direction indicated under any and all circumstances. It is only a command to do so in the exercise of reasonable care . . . ."

> "The mere fact that one vehicle has the right of way over another at a street intersection does not relieve the driver thus favored from the duty of keeping a reasonable lookout and otherwise exercising ordinary care to avoid a collision."

*Id.* at 457, 258 S.E.2d at 518 (citations omitted). The duty of maintaining a proper lookout requires the favored driver to be on the alert for a motorist who attempts to drive through the intersection from an intersecting street on a red light.

Underwood's estate says, however, that even if Underwood had maintained a proper lookout, he could not have seen Friend's vehicle because of the building at the northwest corner of the intersection. In this argument, the estate cites the testimony of the investigating police officer, who stated that he considered the intersection a "blind" one. But, later in his testimony, the officer changed his position by saying the intersection was not a "blind" one if a motorist on Liberty Road proceeds slowly or almost stops at the "stop bar" before entering the intersection. According to Hodnett, this was the very manner in which Underwood approached the intersection. And Hodnett, who was thoroughly familiar with the intersection, testified unequivocally that a motorist who "pull[s] up to the stopbar" on Liberty Road can see a distance of two blocks in the direction from which Friend was proceeding.

On the vital point of visibility, the evidence was in conflict, presenting a typical situation for the intervention of a jury. From Hodnett's evidence, a jury could conclude that Underwood either failed to look to his left for oncoming traffic or, if he did look, that he failed to heed what a reasonable lookout would have revealed. In either event, we think it was for the jury to say whether Underwood's conduct constituted negligence.

■ We think it was also for the jury, if it found that Underwood failed to maintain a proper lookout, to say whether such failure was a proximate cause of Hodnett's injuries. The jury would have been justified in concluding that had Underwood looked to his left, he could have seen Friend in time to stop or, since Friend was traveling in the inside southbound lane of Williamson Road, to turn to the right into the outside lane and escape from Friend's path.

■ Furthermore, Hodnett was entitled to have the jury consider whether Underwood's drinking affected his ability to maintain a proper lookout and to take evasive action. While *Massie* v. *Firmstone* may bind Hodnett to his statement that he *saw* nothing abnormal about Underwood's condition, he is not precluded from relying upon his expert's testimony that a .20 concentration of alcohol in the blood adversely affects a person's vision, depth perception, judgment, and ability to respond to emergency situations. These effects of intoxication Hodnett could not have observed; yet, they all impacted directly upon Underwood's ability to maintain a proper lookout and to heed what obviously was there to be seen. From the evidence, the jury could have concluded that Underwood was driving while intoxicated, that this conduct constituted negligence, and that this negligence contributed to cause Hodnett's injuries.

■ We are of opinion, therefore, that the trial court erred in striking Hodnett's evidence against Underwood's estate. This brings us to the question whether the court also erred in refusing to grant an instruction placing upon Friend the duty of maintaining a proper lookout.

We need not dwell at length upon this question. In discussing Hodnett's case against Underwood's estate, we have explained that a driver who enters an intersection on a green light must maintain a reasonable lookout for a motorist who attempts to drive through the intersection from an intersecting street on a red light. We have also demonstrated that a motorist who "pull[s] up to the stopbar" on Liberty Road can see to his left, or to the north, a distance of two blocks. It follows that a motorist approaching the intersection on Williamson Road from the north can see for the same distance a vehicle which is "pull[ed] up to the stopbar" on Liberty Road.

■ A party is entitled to an instruction if it correctly states the law and is supported by evidence. *Trucking Co.* v. *Flood*, 203 Va.

934, 937, 128 S.E.2d 437, 439-40 (1962). The instruction offered by Hodnett met both aspects of this test, and the instruction should have been granted. Indeed, absent the instruction, if the jury believed Friend had the green light, its members might mistakenly have thought the green light was "an unqualified command [to Friend] to move in the direction indicated . . . [without] keeping a reasonable lookout and otherwise exercising ordinary care to avoid a collision." *Damron*, 220 Va. at 457, 258 S.E.2d at 518.

For the reasons assigned, we will reverse the judgment of the trial court and remand the case for a new trial on all issues as to both defendants.

*Reversed and remanded.*