Present:  All the Justices

JOHN D. HALTERMAN, JR.

v.  Record No. 990311  OPINION BY JUSTICE BARBARA MILANO KEENAN
                                   January 14, 2000
RADISSON HOTEL CORPORATION, ET AL.


          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        John E. Kloch, Judge


     In this appeal, we consider whether the trial court erred
in striking the plaintiff's evidence on a claim of negligence
per se.

     John D. Halterman, Jr., filed an amended motion for
judgment against Radisson Hotel Corporation, Mark Center Hotel
Limited Partnership, and Radisson Mark Plaza Joint Venture
(collectively, Radisson), the owners and operators of the
Radisson Plaza Hotel at Mark Center (the hotel) in Alexandria.
He alleged that he was injured when he was exposed to hazardous
chemicals while repairing washing machines in the hotel's
laundry room.

     In Count I, Halterman alleged that Radisson was guilty of
negligence per se because it violated a federal regulation
promulgated under the Occupational Safety and Health Act (OSHA),
29 U.S.C. §§ 651 through -678.  The regulation, 29 C.F.R.
§ 1910.1200(e), known as the Hazard Communication Standard (HCS
regulation), requires, among other things, that employers

implement a written hazard communication program to provide

specified information to certain employees concerning hazardous

chemicals used at the employer's work sites.  This regulation

provides, in material part:

> (e) *Written hazard communication program.*  (1) Employers shall develop, implement, and maintain at each workplace, a written hazard communication program which . . . includes the following:
>      (i) A list of the hazardous chemicals known to be present using an identity that is referenced on the appropriate material safety data sheet (the list may be compiled for the workplace as a whole or for individual work areas); . . .
>      (ii) The methods the employer will use to inform employees of the hazards of non-routine tasks . . .
>    (2) *Multi-employer workplaces.*  Employers who produce, use, or store hazardous chemicals at a workplace in such a way that the employees of other employer(s) may be exposed (for example, employees of a construction contractor working on-site) shall additionally ensure that the hazard communications programs developed and implemented under this paragraph (e) include the following:
>      (i) The methods the employer will use to provide the other employer(s) on-site access to material safety data sheets for each hazardous chemical the other employer(s)' employees may be exposed to while working;
>      (ii) The methods the employer will use to inform the other employer(s) of any precautionary measures that need to be taken to protect employees during the workplace's normal operating conditions and in foreseeable emergencies; and
>      (iii) The methods the employer will use to inform the other employer(s) of the labeling system used in the workplace.
>    (3) The employer may rely on an existing hazard communication program to comply with these requirements, provided that it meets the criteria established in this paragraph (e).

Halterman asserted that Radisson violated the HCS regulation "by failing in all respects to provide information to him about any chemicals known to be present in the laundry room in such a manner that he may be exposed to them while doing the repair work or in a foreseeable emergency."

In Count II, Halterman asserted a simple negligence claim. He alleged that Radisson failed to maintain the hotel laundry room in a reasonably safe condition and failed to warn him of the hazards posed by chemicals contained in laundry products used in the laundry room.

The following evidence was presented in a jury trial. In March 1995, John Hieatt, the hotel's chief engineer, contacted H & H Machine Company (H & H) to arrange for the repair of a washing machine in the hotel's laundry room that had developed cracks around its stainless steel door hinges. H & H sent Halterman, a certified welder, and Robert Lankford, another employee, to the hotel to perform the work. After Halterman arrived at the work site, Hieatt directed him to repair an additional washing machine that had similar cracks.

Halterman employed a welding process using tungsten inert gas to repair the cracks. During this welding process, heat is generated by electricity and conducted through a noncombustible tungsten electrode to melt stainless steel filler rods and form a weld. The repair work took several hours to complete, and

3

Halterman spent about 30 to 45 minutes of that time welding the cracks in the doors of the machines.

The hotel maintained a display unit on the wall of the laundry room, which contained material safety data sheets for all the laundry products used by the hotel.  These sheets contained information about hazardous components in the products and included warnings and instructions about the proper use of the products, protective measures to follow, and first aid procedures to employ in the event of improper exposure.

One of the products that the hotel used in the laundry room was a laundry sour known as Liquid Lusterfixe.  A material safety data sheet in the display unit noted that Liquid Lusterfixe contained a 15% to 40% concentration of hydrofluosilicic acid, and that this acid was a "hazardous component."

The display unit for the material safety data sheets was located ten feet to the left of the door through which Halterman entered the laundry room.  To reach the washing machines, Halterman was required to turn to his right after passing through the door.  Hieatt did not point out the display unit to Halterman or otherwise advise him about hazardous chemicals used in the laundry room.

Halterman testified that he was in good health when he arrived at the hotel but, before leaving the premises, he had

developed a cough.  During the remainder of the day and the following night, Halterman's cough worsened and he developed shortness of breath.

Dr. Mohammad Taleghani, a pulmonary disease specialist who treated Halterman, testified that Halterman contracted acute chemical pneumonitis as a result of being exposed to Liquid Lusterfixe.  Dr. Taleghani explained that Halterman's pneumonitis eventually "resolved itself" into a condition known as interstitial fibrosis, or scarring of the lung tissue.  Dr. Taleghani further stated that, as a result of the fibrosis, Halterman lost about one-third of his vital lung capacity.

Dr. Laura Welch, an occupational medicine specialist, testified that in her opinion, Halterman's lungs were injured when the welding process heated the hydrofluosilicic acid contained in the Liquid Lusterfixe residue that had accumulated in the cracks around the washing machines' hinges.  She stated that this heat "acted on" the hydrofluosilicic acid "to create" a gas of hydrogen fluoride or another fluorine-based compound, which are toxins known to cause pneumonitis.

At the conclusion of Halterman's evidence, the trial court granted Radisson's motion to strike Halterman's evidence on Count I, the claim of negligence per se.  The court ruled that Halterman was not within the class of persons that the HCS regulation was intended to protect.  The court then denied

5

Radisson's motion to strike Halterman's evidence on Count II, the simple negligence claim.

After Radisson presented testimony and rested its case, the trial court denied Radisson's renewed motion to strike Halterman's evidence on the simple negligence claim. The court also refused Halterman's proposed jury instruction no. 14, which contained the definition of the term "hazardous chemical" used in the HCS regulation, and proposed instruction no. 15, which stated the duties imposed by the HCS regulation on an employer at a "multi-employer workplace." The jury returned a verdict in favor of Radisson on the simple negligence claim and the trial court entered final judgment in accordance with the jury verdict.

On appeal, Halterman contends, among other things, that Radisson violated the HCS regulation by failing "to ensure that the hazards of Liquid Lusterfixe, plainly set out in its material safety data sheet, were communicated to [him]." He asserts that the "multi-employer workplaces" provision of the HCS regulation, 29 C.F.R. § 1910.1200(e)(2), imposed this duty on Radisson, and that Radisson's violation of that provision entitled him to assert a claim of negligence per se against Radisson for the injuries he sustained. We disagree with Halterman's arguments.

6

The requirements for proving a claim of negligence per se are well established.  First, a plaintiff must establish that the defendant violated a statute that was enacted for public safety.[1]  MacCoy v. Colony House Builders, Inc., 239 Va. 64, 69, 387 S.E.2d 760, 763 (1990); Virginia Elec. and Power Co. v. Savoy Const. Co., 224 Va. 36, 45, 294 S.E.2d 811, 817 (1982).  Second, the plaintiff must prove that he belongs to the class of persons for whose benefit the statute was enacted, and that the harm that occurred was of the type against which the statute was designed to protect.  Williamson v. The Old Brogue, Inc., 232 Va. 350, 355, 350 S.E.2d 621, 624 (1986); Pearson v. Canada Contracting Co., 232 Va. 177, 186, 349 S.E.2d 106, 112 (1986); Virginia Elec. and Power Co., 224 Va. at 45, 294 S.E.2d at 817.  Third, the plaintiff must prove that the statutory violation was a proximate cause of his injury.  Thomas v. Settle, 247 Va. 15, 20, 439 S.E.2d 360, 363 (1994); Hack v. Nester, 241 Va. 499, 503-04, 404 S.E.2d 42, 43 (1990); Pullen v. Nickens, 226 Va. 342, 349, 310 S.E.2d 452, 455 (1983).

We first consider whether Halterman proved that Radisson violated the HCS regulation.  Since the trial court struck

---

[1]We note that Radisson does not argue that an OSHA regulation is not the equivalent of a statute enacted for public safety for purposes of establishing a claim of negligence per se.  Thus, in resolving the issues raised in this appeal we will assume, without deciding, that the violation of an OSHA

7

Halterman's evidence, we will review the evidence and the inferences reasonably raised by the evidence in the light most favorable to him.  Claycomb v. Didawick, 256 Va. 332, 335, 505 S.E.2d 202, 204 (1998); A.H. v. Rockingham Pub. Co., 255 Va. 216, 219, 495 S.E.2d 482, 484 (1998).

In deciding this issue, we need not determine whether Halterman, a repairman sent to the workplace by his employer, was within the class of persons that the "multi-employer workplaces" provision of the regulation was intended to protect. Even if Halterman was within this class of persons, his evidence failed to show that Radisson violated any requirements imposed by that provision.

At trial, Halterman did not present any evidence that the material safety data sheets Radisson maintained at its workplace lacked sufficient warnings about the hazardous chemicals contained in Liquid Lusterfixe or the potential consequences of exposure to those chemicals.  Instead, he based his claim of negligence per se solely on Radisson's violation of an alleged requirement in the "multi-employer workplaces" provision to provide this information about the chemicals directly to him, or to show him the location of the material safety data sheets in the laundry room.

regulation is the equivalent of such a statutory violation in asserting this type of claim.

8

The provisions of the HCS regulation apply to "any chemical which is known to be present in the workplace in such a manner that employees may be exposed under normal conditions of use or in a foreseeable emergency." 29 C.F.R. § 1910.1200(b)(2). The HCS regulation required Radisson, among other things, to provide the required information at its workplace to its own employees. See 29 C.F.R. § 1910.1200(e)(1). Under the "multi-employer workplaces" provision of the HCS regulation, Radisson also was responsible for providing information about its hazard communications program to the employer(s) of other employees working at the same work site. See 29 C.F.R. § 1910.1200(e)(2). The required information included, among other things, the "methods the employer will use to provide the other employer(s) on-site access to material safety data sheets for each hazardous chemical the other employer(s)' employees may be exposed to while working." 29 C.F.R. § 1910.1200(e)(2)(i)(emphasis added).

The plain language of this provision did not obligate Radisson to communicate information about the chemicals in use in the laundry room directly to Halterman, the employee of another employer, but only obligated Radisson to communicate or to make available any required information to Halterman's employer, H & H.

The record contains no evidence that Radisson failed to provide to H & H any information required under the HCS

regulation.  Thus, we hold that Halterman failed to prove that Radisson violated the HCS regulation, and we conclude that the trial court did not err in striking Count I of the amended motion for judgment.  Since the trial court reached the correct result for reasons not stated in its ruling, we will uphold that result.[2]  First Sec. Federal Sav. Bank, Inc. v. McQuilken, 253 Va. 110, 115, 480 S.E.2d 485, 488 (1997); see Robbins v. Grimes, 211 Va. 97, 100, 175 S.E.2d 246, 248 (1970).

For the reasons stated in this opinion, we will affirm the trial court's judgment.

Affirmed.

---

[2]Because the trial court properly struck the evidence on Count I, we also conclude that the court did not err in refusing proposed jury instructions nos. 14 and 15, which were based on the HCS regulation.