Present:  All the Justices

KARL SCHLIMMER

v.  Record No. 031773  OPINION BY JUSTICE CYNTHIA D. KINSER
                                June 10, 2004
POVERTY HUNT CLUB, ET AL.

FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
Honorable James A. Luke, Judge

Karl R. Schlimmer ("Schlimmer"), and his parents,
Herman and Doreen Schlimmer, filed a second amended motion
for judgment against Nolen L. Cofield ("Cofield"), Poverty
Hunt Club ("Hunt Club"), and 12 other defendants for
personal injuries Schlimmer sustained in a hunting accident
when Cofield shot him.  A jury returned a verdict in favor
of Cofield and the Hunt Club (collectively, "the
Defendants").[1]  After considering Schlimmer's motion to set
aside the jury verdict, the circuit court affirmed the
verdict and entered judgment in favor of Cofield and the
Hunt Club.

Schlimmer appealed to this Court claiming that the
circuit court erred by refusing to find Cofield negligent
as a matter of law; by not granting a negligence per se
instruction; by refusing to set aside the verdict on the

_____

[1] On brief, the appellees contend that the parents, as
well as all the defendants except Cofield and the Hunt
Club, were nonsuited from the case.  That fact is not clear
in the record.  Nevertheless, Cofield and the Hunt Club
were the only defendants before the jury.

basis that there was insufficient evidence to sustain a defense of contributory negligence or to find that Schlimmer's alleged contributory negligence was a proximate cause of the accident; and by refusing to strike the defense of contributory negligence. Because we conclude that Schlimmer was entitled to a negligence per se instruction, we will reverse the circuit court's judgment.

RELEVANT FACTS

Schlimmer's father had been a member of the Hunt Club for several years. Schlimmer, who was 14 years old at the time of the accident, had been accompanying his father since he was 11 years old as a guest on hunting expeditions on property leased to the Hunt Club. In approximately 1995 or 1996, Schlimmer and his father attended a hunter safety education class together.

On the morning of November 23, 1996, Schlimmer, his father, Cofield, and other members of the Hunt Club gathered for the second hunt of the day. The members decided in which area of the property to conduct the hunt and assigned hunting stands to the hunters. Schlimmer and his father were assigned a stand known as "Fletcher's Old Stand." They were told that someone would meet them at the "loading dock" and show them where their assigned stand was located. However, no one ever met them there. After

waiting about 10 to 15 minutes, Schlimmer's father decided that he and his son could find the stand by themselves, and they proceeded to walk into the "brush."  They soon found a stand familiar to Schlimmer's father and stopped there instead of proceeding to their assigned stand.  Schlimmer sat down on a bucket and his father sat on a log.

After a few minutes, the two saw Cofield walk by within 25 to 30 yards of where Schlimmer and his father were sitting.  Neither of them said anything to Cofield so as to make him aware of their presence.  Schlimmer's father admitted that Cofield probably did not see either him or his son as Cofield walked past them.  Schlimmer then questioned his father about whether they were in "a good place" and asked if they should move to a different location.  Schlimmer testified, "In my mind I was in a safe place but not the right place."  They discussed the situation and had decided they should move to another location when Schlimmer was shot by Cofield.

Up until that moment, Schlimmer had sat with his back against a tree that had a trunk of six to eight inches in diameter.  He had not stood up or moved except to look around nor had his father.  Schlimmer was wearing a blaze orange hat and a camouflage jacket.

A game warden who investigated the accident testified that it would have been "virtually impossible" to see Schlimmer from the tree stand in which Cofield was situated. Pictures taken by the game warden showed that the area in which Schlimmer and his father had stopped contained numerous trees and brush. The game warden measured a distance of 67 yards between Cofield's tree stand and the spot where Schlimmer was sitting.

In both an oral and written statement given to the game warden just after the shooting accident occurred, Cofield stated that he had seen one deer; and then about 20 minutes later, he saw something moving, thought it was a deer, and shot. Cofield's testimony at trial, however, was different. He stated that, after he climbed up a ladder to his tree stand and loaded his gun, he saw two deer pass but was not able to get off a shot at them. Cofield then saw "a buck coming to [his] far left." He shot at the buck but hit Schlimmer. Cofield testified that, at the time he fired his shotgun, he did not know that Schlimmer and his father "were where they were." "No one was supposed to be there," Cofield stated.

The game warden charged Cofield with the reckless handling of a firearm in violation of Code § 18.2-56.1(A). That statute makes it "unlawful for any person to handle

4

recklessly any firearm so as to endanger the life, limb or property of any person." Code § 18.2-56.1(A). Cofield pled guilty to the charge.

ANALYSIS

The dispositive issue in this appeal concerns the circuit court's refusal to instruct the jury on negligence per se. The circuit court stated the following reasons for its refusal to do so: "[Cofield] could have been convicted of reckless handling of a firearm if nobody had been hit. If he hadn't touched the plaintiff, the handling of the firearm was reckless. And I think we've got to rely on the negligence to get to the verdict on this."

Schlimmer argues he was entitled to an instruction on negligence per se because Cofield recklessly handled a firearm in violation of Code § 18.2-56.1(A). The Defendants, however, contend that Cofield's conviction for violating that statute was not "conclusive evidence of negligence in a subsequent civil action." They also argue that the inconsistencies in the evidence about how Cofield came to fire his shotgun did not justify a negligence per se instruction.

A litigant is entitled to jury instructions supporting his or her theory of the case if sufficient evidence is introduced to support that theory and if the instructions

correctly state the law. Price v. Taylor, 251 Va. 82, 85, 466 S.E.2d 87, 88 (1996); Bowers v. May, 233 Va. 411, 413-14, 357 S.E.2d 29, 30 (1987); Hodnett v. Friend, 232 Va. 447, 452, 352 S.E.2d 338, 341 (1987); H. W. Miller Trucking Co. v. Flood, 203 Va. 934, 937, 128 S.E.2d 437, 439-40 (1962). The evidence presented in support of a particular instruction "must amount to more than a scintilla." Justus v. Commonwealth, 222 Va. 667, 678, 283 S.E.2d 905, 911 (1981); Gibson v. Commonwealth, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975). "It is immaterial that the jury could have reached contrary conclusions. If a proffered instruction finds any support in credible evidence, its refusal is reversible error." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975). These principles are likewise true with regard to instructions pertaining to primary negligence. See Gravitt v. Ward, 258 Va. 330, 335, 518 S.E.2d 631, 634 (1999); Yeary v. Holbrook, 171 Va. 266, 287-88, 198 S.E.2d 441, 451 (1938).

The doctrine of negligence per se represents the adoption of "the requirements of a legislative enactment as the standard of conduct of a reasonable [person]." Butler v. Frieden, 208 Va. 352, 353, 158 S.E.2d 121, 122 (1967). When applicable, the violation of a statute or municipal ordinance adopted for public safety constitutes negligence

6

because the violation is the failure to abide by a particular standard of care prescribed by a legislative body. Moore v. Virginia Transit Co., 188 Va. 493, 497-98, 50 S.E.2d 268, 271 (1948). A party relying on negligence per se does not need to establish common law negligence provided the proponent of the doctrine produces evidence supporting a determination that the opposing party violated a statute enacted for public safety, that the proponent belongs to the class of persons for whose benefit the statute was enacted and the harm suffered was of the type against which the statute was designed to protect, and that the statutory violation was a proximate cause of the injury. Halterman v. Radisson Hotel Corp., 259 Va. 171, 176-77, 523 S.E.2d 823, 825 (2000); Virginia Elec. & Power Co. v. Savoy Constr. Co., 224 Va. 36, 45, 294 S.E.2d 811, 817 (1982).

The first two elements of negligence per se, whether the statute was enacted for public safety and whether the injured party was a member of the class of people for whose benefit the statute was enacted and suffered an injury of the type against which the statute protects, are issues of law to be decided by a trial court. See Virginia Elec., 224 Va. at 45, 294 S.E.2d at 817. The third element, whether the statutory violation was a proximate cause of

7

the injury, is generally a factual issue to be decided by the trier of fact.  Thomas v. Settle, 247 Va. 15, 20, 439 S.E.2d 360, 363 (1994); Smith v. New Dixie Lines, Inc., 201 Va. 466, 470, 111 S.E.2d 434, 437 (1959).  Similarly, if the violation of the statute is in dispute, that issue is also for the trier of fact.  Kimberlin v. PM Transp., Inc., 264 Va. 261, 268, 563 S.E.2d 665, 668 (2002).

In this case, Schlimmer established that Cofield violated a statute that was enacted for public safety and that protects a class of people including hunters such as Schlimmer.  Cf. Bailey v. Commonwealth, 5 Va. App. 331, 334, 362 S.E.2d 750, 751 (1987) (the provisions of Code § 18.2-56.1(A) are not limited to hunters).  He further produced sufficient evidence to show that the harm suffered "was of the type against which the statute was designed to protect," Halterman, 259 Va. at 176, 523 S.E.2d at 825, and that his injury was caused by the violation.  When an injured person is a member of the class for whose benefit a particular statute was enacted, violation of that statute constitutes negligence per se and, "if such negligence is a proximate or efficiently contributing cause of an injury, it will support a recovery for damages for such injury." White v. Gore, 201 Va. 239, 242, 110 S.E.2d 228, 231 (1959).  Accordingly, the circuit court erred in refusing

8

to instruct the jury on the doctrine of negligence per se. See McClung, 215 Va. at 657, 212 S.E.2d at 293.

Contrary to the Defendants' argument, the failure to instruct on negligence per se was not harmless error. Based on the record before us, we cannot determine whether the jury found for the Defendants due to lack of primary negligence or due to Schlimmer's contributory negligence. Thus, we cannot say that the error in refusing to instruct on negligence per se was harmless. See Caplan v. Bogard, 264 Va. 219, 229, 563 S.E.2d 719, 724 (2002); Ring v. Poelman, 240 Va. 323, 328, 397 S.E.2d 824, 827 (1990).

CONCLUSION

For these reasons, we will reverse the judgment of the circuit court and remand this case for a new trial.[2]

Reversed and remanded.

---

[2] In light of our decision, it is not necessary to address Schlimmer's remaining assignments of error.

We also express no view on whether the two instructions on negligence per se proffered by Schlimmer were correct statements of law. The Defendants did not argue otherwise to the circuit court or on appeal.