PRESENT:  All the Justices

RENEE MCGUIRE, ADMINISTRATRIX
OF THE ESTATE OF CODY RAY MCGUIRE

                                        OPINION BY
v. Record Number 060755            JUSTICE G. STEVEN AGEE
                                        January 12, 2007
SARAH ELLEN HODGES

          FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                   Malfourd W. Trumbo, Judge

     Renee McGuire, the mother of Cody Ray McGuire and the

Administratrix of the Estate of Cody Ray McGuire

(individually and collectively, "McGuire"), appeals from

the judgment of the Circuit Court of Botetourt County in

favor of Sarah Ellen Hodges ("Mrs. Hodges").  On appeal,

McGuire asserts the trial court erred when it set aside a

jury verdict in her favor and entered judgment for Mrs.

Hodges.  For the reasons set forth below, we will reverse

the judgment of the trial court.

          I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     Mrs. Hodges owned a home in Botetourt County with a

swimming pool located in the backyard.  A chain-link fence,

four feet high, enclosed the pool with only one gate for

entry and exit.  For many years, Mrs. Hodges used a chain

with a separate lock to secure the gate, but in September

2000, the lock disappeared.  Instead of replacing the lock,

Mrs. Hodges wrapped the chain around the gate and the gatepost to secure the gate.[1]

On Sunday, September 17, 2000, Thomas Hodges ("Thomas"), Mrs. Hodges' son, invited McGuire's husband, Stuart McGuire ("Stuart"), to assist him with car repairs at Mrs. Hodges' home. McGuire and the couple's two children, thirty-month old Cody and four-month old Aaron, accompanied Stuart to Mrs. Hodges' home that afternoon.

During the visit, McGuire permitted Cody to play in the front yard while Stuart worked on the vehicle, which was also located in front of the house. At one point, McGuire followed Cody to the backyard, where she saw him pulling the chain on the pool gate, evidently interested in chasing a toy that was inside the pool area. She called her son away but could not determine from her vantage point whether the gate had a lock or that the chain secured the gate.

The two men were unable to finish the car repairs without additional parts, so they requested that McGuire go to a store to obtain the parts. She left Cody under the supervision of her husband while she went to the store. A

---

[1] The gate had a movable latch with two separate prongs, one of which fit around either side of the gatepost. The prongs of the latch could be lifted and thus could not secure the gate without the use of some sort of locking device.

short time later, Stuart realized that his son was no longer playing in the front yard, and after a frantic search, he discovered Cody floating in the backyard pool. Stuart leapt over the pool fence, pulled Cody from the pool and attempted cardiopulmonary resuscitation while an ambulance was called.

Cody was taken to a local hospital but died two days later. McGuire qualified as administratrix of his estate and filed a wrongful death action in the trial court, alleging Mrs. Hodges "negligently failed to properly provide, install, use and/or maintain the fence and gate surrounding [her] swimming pool." McGuire alleged that such negligence was a proximate cause of Cody's death.[2]

Evidence at trial established that at the time of Cody's drowning, the pool gate was unsecured except by a chain wrapped around the gate and gatepost in some fashion. McGuire produced evidence that the fence and gate failed to meet the requirements of the National Building Code[3] and the

---

[2] Stuart renounced any claim arising out of his son's death pursuant to Code § 8.01-53(C).

[3] The trial court took judicial notice of Section 616.9 of the ninth edition of the National Building Code, promulgated in 1984 by the Building Officials and Code Administrators International, Inc. ("BOCA"), which states in relevant part:

> Every person owning land on which there is situated a swimming pool, which contains 24 inches (610 mm) or more of water in depth at any

Botetourt County Code[4] (together, the "Building Code")

because the gate was not self-latching, its latch was not

at least forty-eight inches from the ground, and the

fence's top rail was not at least forty-eight inches high.[5]

point, shall erect and maintain thereon an adequate enclosure either surrounding the property or pool area, sufficient to make such body of water inaccessible to small children. Such enclosure, including gates therein, shall be not less than 4 feet (1219 mm) above the underlying ground. All gates shall be self-latching with latches placed 4 feet (1219 mm) above the underlying ground and otherwise made inaccessible from the outside to small children.

*See* Code § 36-98 (authorizing the Board of Housing and Community Development to adopt and promulgate the Virginia Uniform Statewide Building Code) and 13 VAC § 5-63-10(B) (incorporating the International Building Code, successor to the National Building Code provision relied upon by the trial court).

[4] Section 22-4 of the Botetourt County Code states in relevant part:

It shall be unlawful for any person to construct, maintain, use, possess or control any swimming pool on any property in the county without having a fence completely around such swimming pool. Every gate in such fence shall be capable of being securely fastened at a height of not less than four (4) feet above ground level. Such gate shall not be allowed to remain unfastened while the pool is not in use.

The trial court took judicial notice of this Section.

[5] McGuire's expert witness testified that the gate was not self-latching, but Mrs. Hodges' expert witness testified that the gate was self-latching. McGuire's expert witness testified that the latch was only thirty-two inches above the ground, sixteen inches less than required by Code, and Mrs. Hodges' expert witness conceded this fact. McGuire's expert witness testified that the gate's top rail was only forty-six inches from the ground, but Mrs. Hodges' expert witness testified that the top rail was forty-eight inches from the ground.

Conflicting evidence was presented about when and how Mrs. Hodges left the chain on the gate on the day of the accident. Mrs. Hodges testified that she winterized the pool on Saturday, September 16th, the day before the McGuires visited. When this task was completed, she testified that she closed the gate, made certain the latch was down and secured the chain around the gate and gatepost by wrapping the chain in a "figure eight configuration." She confirmed that she knew that the lock was missing when she wrapped the chain around the gatepost on September 16th. Mrs. Hodges also testified that on Sunday, September 17th, prior to the arrival of the McGuires, she saw the pool and the gate and confirmed that the chain was on the gate as she had "left it that Saturday night."

Mrs. Hodges' niece, Dawn Fields, testified that she also visited with Mrs. Hodges on the day of the accident. Fields testified that Mrs. Hodges told her that she "had been in the pool earlier that day the day Cody drowned," which was Sunday, September 17th. Fields also testified that Mrs. Hodges told her that she had "put the chain around the fence" but "didn't tell [Fields] how she put it around the fence." Fields next saw the gate after Thomas came to the house to call 911, and the gate "was standing wide open."

Thomas testified that the chain was wrapped around the gate and the gatepost when he and Stuart found Cody, and he "pull[ed] it . . . pretty hard" and "had to yank the chain off" to open the gate. Thomas also testified that "it took a good 10 seconds" for him to release the chain from the gate when trying to reach Cody. However, in announcing his decision from the bench, the trial judge observed that Thomas' testimony "had problems."

Stuart testified that during the search for Cody, he was within ten feet of the fence when he spotted his son in the pool. He immediately ran to the fence, used his hands for balance and jumped over the fence and into the pool area. Stuart could not remember whether the gate was open or closed when he jumped into the pool area, and he could not remember whether Thomas had to open the gate.

McGuire testified that earlier in the day, when she called her son away from the fence, the gate was closed and she "could see the chain in Cody's hands" but she "did not know if there was a lock there or not."

The jury returned a verdict in favor of McGuire in the amount of $217,348.95, plus pre-judgment interest. Mrs. Hodges then moved to set aside the verdict. The trial court considered post-trial submissions, reviewed the record, and sustained Mrs. Hodges' motion to set aside the

6

jury verdict.  The trial court concluded that the evidence at trial failed to establish that the Building Code violations relied upon by McGuire were a proximate cause of Cody's death.  We awarded McGuire this appeal.

## II. ANALYSIS

The trial court's authority to set aside a jury verdict is limited and should be exercised "only if a jury verdict is plainly wrong or without credible evidence to support it."  Jenkins v. Pyles, 269 Va. 383, 388, 611 S.E.2d 404, 407 (2005); see also Cohn v. Knowledge Connections, Inc., 266 Va. 362, 366, 585 S.E.2d 578, 581 (2003); Shalimar Dev., Inc. v. FDIC, 257 Va. 565, 569-70, 515 S.E.2d 120, 123 (1999); Henderson v. Gay, 245 Va. 478, 480, 429 S.E.2d 14, 16 (1993); Code § 8.01-430.  If the evidence adduced at trial is conflicting on a material point, or if reasonable persons may draw different conclusions from the evidence, or if a conclusion is dependent on the weight the fact finder gives to the testimony, a judge may not substitute his or her conclusion for that of the jury merely because he or she would have reached a different result.  Jenkins, 269 Va. at 388, 611 S.E.2d at 407; see also Cohn, 266 Va. at 366, 585 S.E.2d at 581; Shalimar Dev., 257 Va. at 570, 515 S.E.2d at 123; Henderson, 245 Va. at 480-81, 429 S.E.2d at 16.

7

Because the jury's function is to determine the credibility of the witnesses, weigh the evidence, and resolve all conflicts in the evidence, "[i]f there is credible evidence in the record which supports the jury's verdict, we must reinstate that verdict and enter judgment thereon." Rogers v. Marrow, 243 Va. 162, 166, 413 S.E.2d 344, 346 (1992); see also Hoar v. Great E. Resort Mgmt., Inc., 256 Va. 374, 378, 506 S.E.2d 777, 780 (1998); Carter v. Lambert, 246 Va. 309, 314, 435 S.E.2d 403, 405–06 (1993). In making this determination, we give the recipient of the jury verdict the benefit of all substantial conflicts in the evidence, as well as the reasonable inferences that may be drawn from the evidence. Cohn, 266 Va. at 366, 585 S.E.2d at 581; Shalimar Dev., 257 Va. at 570, 515 S.E. 2d at 123; Henderson, 245 Va. at 481, 429 S.E. 2d at 16.

To establish negligence sufficient to sustain a judgment against Mrs. Hodges, McGuire was required "to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003); see also Fox v. Custis, 236 Va. 69, 73, 372 S.E.2d 373, 375 (1988); Trimyer v. Norfolk Tallow Co., Inc., 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951). By alleging the

8

violation of the Building Code, McGuire presented a claim of negligence per se. MacCoy v. Colony House Builders, Inc., 239 Va. 64, 69, 387 S.E.2d 760, 763 (1990); see also Schlimmer v. Poverty Hunt Club, 268 Va. 74, 79, 597 S.E.2d 43, 46 (2004).

The doctrine of negligence per se represents the adoption of "the requirements of a legislative enactment as the standard of conduct of a reasonable [person]." Butler v. Frieden, 208 Va. 352, 353, 158 S.E.2d 121, 122 (1967). A party relying on negligence per se does not need to establish common law negligence provided the proponent produces evidence supporting a determination that the opposing party violated a statute enacted for public safety, that the proponent belongs to the class of persons for whose benefit the statute was enacted and the harm suffered was of the type against which the statute was designed to protect, and that the statutory violation was a proximate cause of the injury. Halterman v. Radisson Hotel Corp., 259 Va. 171, 176-77, 523 S.E.2d 823, 825 (2000); Virginia Elec. & Power Co. v. Savoy Constr. Co., 224 Va. 36, 45, 294 S.E.2d 811, 817 (1982).

While violation of such a statute provides the elements of a duty and breach, a plaintiff has not proved actionable negligence unless the plaintiff also proves that

9

the failure to adhere to the statutory requirement was a proximate cause of the injury. "[A] mere breach of a particular duty imposed by statute does not make the violator guilty of actionable negligence, which will support a recovery for damages unless such violation was the proximate cause of the injury." Hamilton v. Glemming, 187 Va. 309, 317, 46 S.E.2d 438, 442 (1948).

Whether the statutory violation was a proximate cause of the injury is generally a factual issue to be decided by the trier of fact. Schlimmer, 268 Va. at 79, 597 S.E.2d at 46. Thomas v. Settle, 247 Va. 15, 20, 439 S.E.2d 360, 363 (1994). Similarly, if the violation of the statute is in dispute, that issue is also for the trier of fact. Schlimmer, 268 Va. at 79, 597 S.E.2d at 46. Kimberlin v. PM Transp., Inc., 264 Va. 261, 268, 563 S.E.2d 665, 668 (2002).

In the case at bar, the evidence was clearly sufficient, and the trial court ruled as a matter of law,[6] that Mrs. Hodges violated the Building Code because the pool gate latch was not self-latching and the latch itself was substantially lower (32 inches from the ground instead of 48 inches) than required. Cody was clearly within the

---

[6] Jury Instruction Number 8 at trial stated: "As a matter of law the defendant was negligent."

10

class of individuals meant to be protected because Section 616.9 of the National Building Code specifically required the fence to make the pool entirely "inaccessible to small children." The harm suffered here, Cody's drowning, was the type against which the statute was designed to protect. The case then turns on whether McGuire, as plaintiff, produced credible evidence to show that the foregoing statutory violations by Mrs. Hodges were a proximate cause of Cody's death.

McGuire contends that she presented sufficient credible circumstantial evidence that allowed the jury to draw the permissible inference that Cody accessed the pool through the gate by pulling on the chain, lifting the latch that was only thirty-two inches from the ground, and then slipped through the gate into the pool area. McGuire argues that her burden on appeal is to show that Cody's entry through the defective gate was probable, rather than merely possible, and she is not required to exclude all other hypotheses. Further, McGuire avers that the jury was able to consider the credibility of Mrs. Hodges, her niece and son, among others, and that the weight of the evidence demonstrated actionable negligence caused by Mrs. Hodges.

Mrs. Hodges responds that it was McGuire's burden to show Cody accessed the pool as a result of the Building

Code violations and that the evidence failed to show that any defect in the pool gate was a proximate cause of Cody's death.  Mrs. Hodges contends that McGuire simply failed to meet her burden of proof because she failed to show how Cody accessed the pool, and thus the jury impermissibly presumed negligence just because an accident occurred.  Mrs. Hodges also responds that the jury's decision was "nothing but their own conjecture and speculation as to how Cody entered the pool."  Mrs. Hodges concludes that the trial court properly set aside the jury verdict because McGuire "was unable to satisfy her burden of proof."

We agree with McGuire that the trial court erred in setting aside the jury verdict.  The circumstantial evidence in this case was sufficient to support the decision reached by the jury that Mrs. Hodges' negligence was a proximate cause of Cody's death.

Mrs. Hodges' post-verdict motion to set aside the jury verdict, and the trial court's decision to do so, focused primarily on our holding in Atrium Unit Owners Association.  In that case, a condominium unit owner was the victim of a burglary with no sign of forced entry.  266 Va. at 290-91, 585 S.E.2d at 545-46.  The condominium association's copy of the owner's key was missing, and the owner alleged this negligence concerning the key was a proximate cause of her

12

damages.  Id.  Evidence at trial in Atrium demonstrated the

owner's sliding glass door was unlocked, providing a means

of access other than by the missing key.  Id. at 291, 585

S.E.2d at 546-47.  We reversed the trial court's judgment

confirming the jury's verdict because "there was nothing in

the record from which the jury could reasonably infer a

causal connection between [the defendant's] alleged

negligence and the damages [the plaintiff] sustained."  Id.

at 296, 585 S.E.2d at 549.

Like Atrium, the case at bar is one where the proof is

entirely by circumstantial evidence.  "Circumstantial

evidence is proof of a series of other facts than the fact

in issue, which by experience have been found so associated

with that fact, that, in the relation of cause and effect,

they lead to a satisfactory and certain conclusion."  Ryan

v. Maryland Cas. Co., 173 Va. 57, 62, 3 S.E.2d 416, 418

(1939).  Circumstantial evidence in a case must be

sufficient to establish "that the result alleged is a

probability rather than a mere possibility."  Southern

States Coop. Inc. v. Doggett, 223 Va. 650, 657, 292 S.E.2d

331, 335 (1982).  When predicate facts are proven and the

jury can draw a reasonable inference without resorting to

speculation or conjecture, the decision whether to draw the

inference is the jury's. <u>O'Brien v. Everfast, Inc</u>., 254 Va. 326, 330, 491 S.E.2d 712, 714 (1997).

The standard of review directs that we consider whether the circumstantial evidence was sufficient for the jury to conclude that Cody's death was probably, rather than merely possibly, the result of Mrs. Hodges' negligence regarding the pool gate. As noted above, evidence heard by the jury permitted it to conclude that Mrs. Hodges had installed a defective gate which offered a young child access to the swimming pool because the latch was not above his reach. Testimony at trial described an unlocked gate, secured only by a chain, which the young boy was attempting to open shortly before he was discovered floating in the pool. The evidence was in question between Mrs. Hodges' testimony that she left the pool gate firmly secured the day before the accident and the niece's testimony that Mrs. Hodges reentered the pool area on September 17th without describing the status of the chain on the gate. While McGuire admitted to seeing the chain on the gate, she did not know whether the gate was secured.

The only evidence directly supporting as fact that the gate was well secured at the time of the drowning was the testimony of Thomas, who claimed the chain was wound such that he "had to pull it loose" and it took him ten seconds

14

to release it.  However, as the trial court implied, the jury was free to discredit Thomas' testimony, and it was unnecessary that McGuire prove the chain was fully removed from the gate or that Cody fully opened the gate.  It was sufficient to prove Mrs. Hodges' causal negligence if the jury could reasonably infer the non-self-latching gate could be opened enough for Cody, a 30-month old child, to slip between the gate and the gatepost even with the chain still wrapped in some fashion around the gate so as to prevent entry by an adult.

Mrs. Hodges did not present evidence, nor does she argue on appeal, that Cody gained access to the pool by scaling the fence or in some other manner than by the gate.  Instead, she relies on the argument that McGuire did not carry her burden of proof that Cody used the gate in order to support the trial court's decision to set aside the jury's finding of negligence.

However, this case is unlike Atrium in several respects.  First, the evidence of Cody pulling on the chain shortly before he was found in the pool would be equivalent to a condominium association employee in Atrium being seen with the missing key outside the condominium owner's residence before the break-in: a circumstance that did not occur.  266 Va. at 293-96, 585 S.E.2d at 548-49.  In

15

addition, there was no evidence presented of an alternative means of access to the pool other than the defective gate, whereas the unlocked sliding glass door provided such an alternative in Atrium.  Id.  Accordingly, Atrium does not represent applicable precedent for the trial court's decision to set aside the jury's verdict.

The jury was able to consider the conflicting testimony and draw the permissible inference that a proximate cause of Cody's death was probably Mrs. Hodges' failure to fully secure the defective gate, allowing Cody to slip into the pool area by that means.  The facts, although conflicting, were sufficiently established for the jury to draw an inference that Mrs. Hodges' negligence caused Cody's death by "a probability rather than a mere possibility."  Southern States, 223 Va. at 657, 292 S.E.2d at 335.  McGuire thus presented credible, circumstantial evidence at trial that supported the jury's verdict.  See Rogers, 243 Va. at 166, 413 S.E.2d at 346.

It was the province of the jury, not the court, to weigh the evidence and consider the credibility of the witnesses.  See Hoar, 256 Va. at 378, 506 S.E.2d at 780; Carter, 246 Va. at 314, 435 S.E.2d at 405-06; and Rogers, 243 Va. at 166, 413 S.E.2d at 346.  Given the conflicting circumstantial evidence, the jury properly reviewed the

16

credibility of the witnesses and weighed the evidence in reaching the verdict.  We must therefore reinstate the jury verdict because credible evidence supports it.  See Hoar, 256 Va. at 378, 506 S.E.2d at 780; Carter, 246 Va. at 314, 435 S.E.2d at 405-06; Rogers, 243 Va. at 166, 413 S.E.2d at 346.

### III. CONCLUSION

For the foregoing reasons, we will therefore reverse the judgment of the trial court, reinstate the jury's verdict, and enter final judgment for McGuire.

Reversed and final judgment.