# CIRCUIT COURT OF THE CITY OF LYNCHBURG

Nicholas Parisi,
personal representative of
John Paul Parisi,
deceased

v.

Ronald Lee Cash, Jr., *et al.*

December 11, 2015

Case No. CL14000333-00

BY JUDGE F. PATRICK YEATTS

I am writing to furnish the decision of the Court in the above case. This matter is before the Court on the defendant's Demurrer and the plaintiffs' opposition thereto.

This matter came on for a hearing on November 6, 2015, on the Demurrer of the defendants, Centra Health, Inc., and Virginia Baptist Hospital, to Counts 1 through 9 of plaintiff's Complaint. Plaintiff conceded that Count 2 alleging Vicarious Liability (*Respondeat Superior*) was a remedy and not a cause of action. Furthermore, Counts 3 and 6 were nonsuited. At the time, the court took the demurrer as to the remaining counts under advisement.

Count 1 of the plaintiff's Complaint alleges sexual assault and battery. Count 4 of the plaintiff's Complaint alleges violations of the Virginia Consumer Protection Act ("VCPA"). Count 5 of the plaintiff's Complaint alleges Negligence *per se* (as pursuant to Virginia Code § 37.2-400, Rights of Individuals Receiving Services). Count 7 of the plaintiff's Complaint alleges Intentional Infliction of Emotional Distress. Count 8 of the plaintiff's Complaint alleges Negligent Infliction of Emotional Distress. Count 9 of the plaintiff's Complaint alleges Negligence in Failing To Protect, Plaintiff asserts that the defendant's demurrer should be overruled. The Court has reviewed the relevant pleadings, briefs, and case law, and considered the arguments made at the prior hearing.

*Background*

In deciding a demurrer, the court must take as true all facts properly pleaded in the complaint and all reasonable and fair inferences that may be drawn from those facts. *W. S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 384, 478 S.E.2d 295 (1996). Plaintiff Nicholas Parisi, personal representative for John Paul Parisi ("Mr. Parisi") (deceased), alleges the following:

> Defendant Centra Health, Inc., is a Virginia Corporation which owns and operates defendant Virginia Baptist Hospital, which is located in Lynchburg, Virginia (hereinafter both will be occasionally referred to collectively as "Defendant Hospital"). In the April 23-30, 2012, time period, Mr. Parisi was in the locked Acute Psychiatry unit (referred to occasionally as "Mundy 3" or "VBH M3") at defendant hospital in Lynchburg, Virginia. Upon admission to the Acute Psychiatry unit at Defendant Hospital, Mr. Parisi was given his "Notice of Patient Rights" which he was asked to sign in front of a witness.
>
> In his "Notice of Patient Rights," Mr. Parisi was told that, "[I]nsofar as it is within the reasonable capabilities and limitations of the Psychiatric Unit . . . each person admitted to the Virginia Baptist Hospital Psychiatric Unit shall: 3. Be treated with dignity as a human being and be free from abuse." Upon entry into the Unit Mr. Parisi was also given his "Patient Rights for Hospital Services." In his "Patient Rights for Hospital Services" the first section was titled "Patient Safety" and in the first phrase of that first section Mr. Parisi was promised that "You have the right to be cared for in a safe environment," and furthermore; in a later section Mr. Parisi was promised that "You have the right to considerate, respectful care at all times and under all circumstances."
>
> Defendant Ronald Lee Cash, Jr. ("Mr. Cash"), who was assigned to work in the Adult Acute Psychiatric Unit, Mundy Building, at Defendant Hospital in Lynchburg, Virginia, was the staff member who signed as the witness to Mr. Parisi's signature on the "Patient Rights for Hospital Services."
>
> Mr. Parisi was a patient at the Adult Acute Psychiatric Unit, Mundy Building, at the Defendant Hospital when he was repeatedly sexually assaulted by the Defendant Hospital's employee, Mr. Cash.
>
> Specifically, in the early morning hours of April 23, 2012, Mr. Parisi was awakened by Mr. Cash holding him down, squeezing his throat, and sodomizing him. Mr. Cash also

threatened Mr. Parisi that he would hurt him if he told anyone about what happened.

## Discussion

The purpose of a demurrer is to determine whether a complaint states a cause of action upon which relief may be granted. *Tronfeld v. Nationwide Mutual Ins. Co.*, 272 Va. 709, 712-13, 636 S.E.2d 447, 449 (2006). A demurrer admits the truth of all properly pleaded facts to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. *Dodge v. Randolph-Macon Woman's College*, 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008). A demurrer does not, however, admit the correctness of the pleader's conclusions of law. *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 102, 540 S.E.2d 134, 136-137 (2001) (quoted in *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 142-43, 670 S.E.2d 704, 705 (2009)). A demurrer tests the legal sufficiency of facts alleged in the pleadings, but not the strength of proof. *Glazebrook v. Board of Supervisors,* 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003).

In deciding whether to sustain a demurrer, a trial court must determine "whether the . . . motion for judgment alleged sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law. To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006) (internal quotation marks and citations omitted).

The Defendant Hospital first argues that Plaintiff's claims for any and all torts which occurred during the provision of health care to a patient by a provider must be brought pursuant to the Virginia Medical Malpractice Act.

The Court holds that the acts and omissions alleged in the Plaintiff's Complaint are well removed from the provision of health care or professional services. Furthermore, the Court concludes that these alleged acts and omissions do not involve the provision of health care or professional services as contemplated by the Act. As stated in *Alcoy v. Valley Nursing Homes, Inc.*, "Instead, the alleged omissions involve administrative, personnel, and security decisions related to the operation of the [defendant hospital], rather than to the care of any particular patient. The plain language of the definitions of "malpractice" and "health care" in the Act underscores this distinction." *Alcoy v. Valley Nursing Homes, Inc.*, 272 Va. 37, 43, 630 S.E.2d 301 (2006).

In *Alcoy*, relied on by the plaintiff, the court considered the issue of whether a sexual assault of a health care provider's patient by its employee fell within the Act. By their terms, the definitions of "malpractice" and "health care" apply to patients on an individual basis, rather than to the

staffing and security of any medical facility in which the patients are located. *Id.*

The *Alcoy* court continued, as defined in Va. Code § 8.01-581.1, "health care" relates to acts or omissions "on behalf of a patient." Likewise, under the same definitional statute, "malpractice" involves health care or professional services that are rendered or should have been rendered "to a patient." *Id.*

Furthermore, the Virginia Supreme Court decision in *Hagan v. Antonio*, 240 Va. 347, 397 S.E.2d 810 (1990), held that "medical malpractice" may include a range of tortious conduct committed by a health care provider based on health care or professional services rendered. In *Hagan*, the plaintiff brought suit against a doctor who allegedly sexually assaulted her by fondling her breasts during the course of a physical examination. The issue in that case was whether the acts of the doctor constituted "medical malpractice" such that the plaintiff had to give a prior notice of claim under former Va. Code § 8.01-581.2(A). See also *Dell v. French*, 38 Va. Cir. 91 (1995). The Supreme Court ruled that the statutory definition of medical "malpractice" contained in Va. Code § 8.01-581.1 includes tortious, even possibly criminal acts, by a health care provider, provided that the acts are based on, arise from, or stem from the provision of medical care to a patient. 240 Va. at p. 351. The *Hagan* Court found that the alleged sexual assault by fondling the plaintiff's breasts, if proved, would be medical "malpractice" as defined by Va. Code § 8.01-581.1.

Ultimately, the Court in *Hagan* distinguished the fondling of the plaintiff's breasts, which is "an inseparable part of the health care being rendered," and a robbery or rape committed by a health care provider in the course of an examination. The Court opined that a rape or a robbery would not be medical malpractice because such actions "could never arguably be classified as an inseparable part of examination or treatment." *Id.*

In the present case, the factual allegations of the plaintiff's pleadings address conduct unrelated to any health care or professional service that the Defendant Hospital should have rendered to Mr. Parisi individually. Therefore, the Court overrules the Demurrer as plaintiff's allegations fall outside the scope of the Virginia Medical Malpractice Act.

The Defendant Hospital next argues that the plaintiff's VCPA claim should be barred because it fails to state a claim under the VCPA. Although the issue of whether or not the health care industry is totally exempt from the VCPA is a question that has not yet been decided by the Virginia Supreme Court, several state and federal trial courts have already decided that health care services provided to a consumer are indeed services which are subject to the VCPA. See *Beaty v. Manor Care, Inc.*, 2003 U.S. Dist. LEXIS 25044 (E.D. Va. 2003); *Humphrey v. Leewood Healthcare Center*, 73 Va. Cir. 346 (2007); *Evans v. Diamond Healthcare Corp.*, 73 Va. Cir. 502 (2007).

The Court holds that, because health care services are not completely exempt from the meaning of the VCPA, it would be premature to say that Plaintiff has no cause of action under the VCPA. As for factual issues such as misrepresentation, actual reliance on misrepresentation, and proof of a willful violation of the VCPA, the Court deems that these issues are purely factual in nature and are premature for ruling at the demurrer stage of the present case. Furthermore, the Court finds that Plaintiff's factual allegations stated in the complaint have satisfied a VCPA claim with adequate particularity. Therefore, the Court overrules the Demurrer to the VCPA claim.

Finally, the Defendant hospital argues that the Plaintiff has failed to properly plead a cause of action for negligence *per se*.

The doctrine of negligence *per se* represents the adoption of "the requirements of a legislative enactment as the standard of conduct of a reasonable [person]." *Butler v. Frieden*, 208 Va. 352, 353, 158 S.E.2d 121, 122 (1967). When applicable, the violation of a statute or municipal ordinance adopted for public safety constitutes negligence because the violation is the failure to abide by a particular standard of care prescribed by a legislative body. *Moore v. Virginia Transit Co.*, 188 Va. 493, 497-98, 50 S.E.2d 268, 271 (1948); see also *Schlimmer v. Poverty Hunt Club*, 268 Va. 74, 78, 597 S.E.2d 43, 46, 2004 Va. LEXIS 85, *7 (2004). When alleging negligence *per se,* a plaintiff need not establish common-law negligence as set forth above as long as the plaintiff satisfies certain other elements.

In *Schlimmer*, the Supreme Court of Virginia outlined the four necessary elements of a negligence *per se* action. The first two elements of negligence *per se,* whether the statute was enacted for public safety and whether the injured party was a member of the class of people for whose benefit the statute was enacted and suffered an injury of the type against which the statute protects, are issues of law to be decided by a trial court. *See Virginia Elec.*, 224 Va. at 45, 294 S.E.2d at 817. The third element, whether the statutory violation was a proximate cause of the injury, is generally a factual issue to be decided by the trier of fact. *Thomas v. Settle*, 247 Va. 15, 20, 439 S.E.2d 360, 363 (1994); *Smith v. New Dixie Lines, Inc.*, 201 Va. 466, 470, 111 S.E.2d 434, 437 (1959). Similarly, if the violation of the statute is in dispute, that issue is also for the trier of fact. *Kimberlin v. PM Transp., Inc.*, 264 Va. 261, 268, 563 S.E.2d 665, 668 (2002).

Virginia circuit courts have routinely sustained demurrers to negligence *per se* claims in the context of medical malpractice suits. In *Conner v. Beverly Healthcare*, the plaintiff claimed that the defendant health care providers had violated various federal and state statutes that regulated matters such as training of medical staff and abuse and neglect of the elderly. *Conner v. Beverly Healthcare*, 2002 Va. Cir. LEXIS 97, *2 (Va. Cir. May 6, 2002). The plaintiff argued that the defendants' alleged violation of these statutes and regulations established negligence *per se*. *Id.* The defendants demurred,

arguing that these statutes did not set forth private civil causes of action. The Circuit Court of the City of Buena Vista sustained the defendants' demurrers. The court stated:

> [t]he standard of care applicable to the negligence aspect of this case is that as set forth in Section 8.01-581.20 of the Code of Virginia. The plaintiff may only rely on [that section] to establish the applicable standard of care. . . . Any alleged violations of [the state and federal statutes] do not establish negligence *per se.*

*Id.*

Similarly, in *Fager v. Straight, Inc.*, the Circuit Court of Fairfax County sustained a demurrer to a negligence *per se* claim, which was based upon a licensed drug rehabilitation facilities' alleged violation of Virginia Code § 37.1-84.1. *Fager v. Straight, Inc.*, 28 Va. Cir. 272, 273, 1992 Va. Cir. LEXIS 289, *2 (1992). Va. Code § 37.1-84.1 set forth guidelines to protect the legal and human rights of individuals receiving services in such facilities. *Id.* The plaintiff alleged that the drug rehabilitation facilities' purported violation of this section established negligence *per se. Id.* The court sustained the defendants' demurrers, declaring "The Court finds that an alleged violation of this statute does not give rise to a private cause of action." *Id.*, at 273-74.

Unlike the circuit court cases cited above, the facts of the present case are far removed from the Virginia Medical Malpractice Act, and, therefore, an action based on negligence *per se* should not be barred based on the above reasoning. The plaintiff, in his Complaint, alleged that § 37.2-400 of the Code of Virginia was enacted to protect hospital patients. The Court finds that the provisions within the statute can be interpreted by their plain meaning as protecting public safety. Furthermore, Mr. Parisi, as a patient of the Defendant Hospital, is considered a member of the class of people for whose benefit the statute was enacted and suffered an injury of the type arguably against which the statute was designed to protect against. Proximate cause of the injury is a factual issue that cannot be appropriately decided at the demurrer stage of this case. The Court, therefore, overrules the Defendant Hospital's demurrer to the negligence *per se* claim.

## Conclusion

For the foregoing reasons, the demurrers to Counts 1, 4, 5, 7, 8, and 9 will be overruled.