## Noel C. Taylor, Mayor, et al.

## v.

## Shaw and Cannon Company, et al.

Record No. 860608

September 23, 1988

Present: Carrico, C.J., Poff, Compton, Russell, Thomas, and Whiting, JJ.

*William R. Rakes; W. David Paxton (Gentry, Locke, Rakes & Moore,* on briefs), for appellants.

*Jack V. Place; T. L. Plunkett, Jr. (Thomas B. Dickenson; Jolly, Place, Fralin & Prillaman, P.C.; Plunkett & Logan,* on briefs), for appellees.

CARRICO, C.J., delivered the opinion of the Court.

Shaw and Cannon Company, a South Carolina partnership (Shaw), is the owner of a 49.5-acre tract of land in an area of the City of Roanoke zoned "LM-Light Manufacturing." On November 28, 1984, Shaw submitted to the city a preliminary site plan for subdividing the land as a mobile home park. On March 18, 1985, the city's zoning administrator denied Shaw a permit to construct the mobile home park, stating that the proposed use would violate § 36-248 of the city's zoning ordinance.

Shaw then filed a "Request for Interpretation" with the city's board of zoning appeals (the Board). By order dated April 10, 1985, the Board found that § 36-248 "specifically permits mobile home parks in Light Manufacturing districts" and directed the zoning administrator to issue a "proper permit."

On May 9, 1985, Noel C. Taylor, the Mayor of Roanoke, along with the other members of city council and the city manager (collectively, the City), filed a petition for certiorari in the court below seeking reversal of the Board's decision. By final order entered April 9, 1986, the trial court found that the decision of the Board was "clearly right" and affirmed the Board's order. The City has appealed.

In the zoning ordinance, no provision is made for the use of mobile homes per se. Mobile home parks, however, are listed as

one of 26 principal uses permitted in C-2 general commercial districts. The principal uses permitted in light manufacturing districts are listed in § 36-248(a):

> In the LM light manufacturing district, the following principal uses and structures shall be permitted:
> Any use permitted in the IDM district and, in addition, *any use permitted in the C-2 [district]*, C-3 [district] and C-4 [district], *except residential dwellings.*

(Emphasis added.) Also relevant is § 36-251, which prohibits "[d]wellings" as principal uses in light manufacturing districts.

The question for decision is whether mobile home parks, while ostensibly permitted as principal uses in light manufacturing districts through § 36-248(a)'s incorporation of C-2 permitted uses, are in fact excluded by § 36-248(a)'s exclusion of "residential dwellings" and § 36-251's prohibition against "[d]wellings."

The City argues that the language of the zoning provisions in question is unambiguous and that since the term "residential dwellings" is not specifically defined in the zoning ordinance, it must be given its plain and natural meaning. When given this meaning, the City maintains, the term refers to "a place where one or more people live and sleep, as opposed to a structure used for commercial or business purposes."

Clearly included in the plain meaning of the prohibition against "residential dwellings," the City opines, are mobile homes. Indeed, the City points out, § 36-2 of the zoning ordinance defines a mobile home as a "detached residential dwelling unit."[1] The City also points out that the same section defines mobile home parks as "[p]remises . . . where spaces or lots are set aside or offered for sale or rent for use by mobile homes for living or sleeping purposes." The City concludes that since mobile homes are residential dwellings and mobile home parks are places designated for the use of mobile homes, § 36-248(a) excludes both mobile homes and mobile home parks from light manufacturing districts.

The Board and Shaw contend that the question whether mobile home parks are permitted in light manufacturing districts cannot be resolved by referring only to § 36-248(a) and the definition of

---

[1] Counsel for the Board suggested in oral argument that the addition of the word "unit" to the term "residential dwelling" may make the term mean "something different," but counsel did not indicate what the difference might be, and we perceive none.

mobile homes in § 36-2. Rather, the argument goes, the entire zoning ordinance must be read *in pari materia* and effect given to all provisions concerning permitted and prohibited uses in order to understand § 36-248(a) and interpret it properly.

A reading of the entire ordinance, the Board and Shaw say, demonstrates that mobile homes are treated separately from residential dwellings. Accordingly, the argument continues, had it been intended to exclude mobile homes from light manufacturing districts, the exclusion would have been accomplished by separate reference to such homes rather than by the use of the term "residential dwellings" in the exception clause of § 36-248(a).

In an attempt to show that the term "residential dwellings" does not mean what the City claims it means, the Board and Shaw cite numerous other provisions of the zoning ordinance. For example, they cite the definition of a single-family dwelling in § 36-2 as meaning "[a] permanent, detached residential unit, *not a mobile home*, having a single front entrance and being designed for and occupied by one family only." (Emphasis added.) The Board and Shaw then argue that had § 36-248(a) excepted "single family dwellings," rather than "residential dwellings," it would be clear that mobile homes are not prohibited in light manufacturing districts.[2]

Finally, the Board argues that if the terms of the zoning ordinance itself do not indicate that mobile home parks are permitted in light manufacturing districts, then "legislative history and other extrinsic facts" are available to support such a conclusion. The Board does not tell us what the "legislative history and other extrinsic facts" are, but Shaw picks up the argument and cites previous rulings by the city zoning administrator and the city attor-

---

[2] A ready answer to this argument is that § 36-248(a) does not employ the "single-family dwelling" terminology, and for good reason. As the City points out, use of that terminology would exclude only the single-family form of residential dwelling from light manufacturing districts. All other forms would be permitted, including mobile home parks, which are permitted in C-2 districts, dwelling units above the ground floor of commercial structures, which are permitted in C-3 districts, and high-rise apartments, which are permitted in C-4 districts. The City contends, of course, that all residential dwellings are prohibited as principal uses in light manufacturing districts.

The obvious reason for inclusion of the "not a mobile home" language in the single-family dwelling definition is to exclude mobile homes from residential districts where single-family dwellings are the only residential uses permitted, *i.e.*, RS-1, RS-2, and RS-3 single-family residential districts.

ney's office interpreting the zoning ordinance as permitting mobile home parks in light manufacturing districts.[3]

■ These arguments of the Board and Shaw are relevant, however, only if the language of § 36-248(a) is ambiguous.[4] "Language is ambiguous if it admits of being understood in more than one way or refers to two or more things simultaneously. . . . An ambiguity exists when the language is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness. . . ." *Brown* v. *Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (citations omitted).

■ But "[i]f language is clear and unambiguous, there is no need for construction by the court; the plain meaning and intent of the enactment will be given it. . . . When an enactment is clear and unequivocal, general rules for construction of statutes of doubtful meaning do not apply. . . ." *Id.* (citations omitted).

■ Furthermore, "when the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning. . . . And, when an enactment is unambiguous, extrinsic legislative history may not be used to create an ambiguity, and then remove it, where none otherwise exists. . . ." *Id.* (citations omitted).

■ In resolving the issues in this case, we read §§ 36-2, -248(a), and -251 *in pari materia* since they relate to the same subject. We do not think the language of these sections suffers from any ambiguity. The language cannot be understood in more than one way, and it does not refer to two or more things simultaneously. It is not difficult to comprehend, is not of doubtful import, and is not lacking in clarity or certainty.

---

[3] The city attorney's office later changed its position. Upon advice of this change, the zoning administrator denied the permit to construct the proposed mobile home park. The zoning administrator, however, continues to believe that mobile home parks are permitted in light manufacturing districts.

[4] Shaw makes an additional argument based upon the previous rulings of city officials. Shaw says that the prior construction given the zoning ordinance by those charged with its administration estops the city from changing its position when, "in a singular instance, it fails to suit its purpose." However, in *Board of Supervisors* v. *Booher*, 232 Va. 478, 481, 352 S.E.2d 319, 321 (1987), we pointed out that, in Virginia, estoppel does not apply to a local government in the discharge of its governmental functions, and we cited *Segaloff v. City of Newport News*, 209 Va. 259, 261, 163 S.E.2d 135, 137 (1968), as authority for this rule.

■ We think that the language of the zoning provisions in question expresses the clear intent to prohibit all residential uses, including mobile homes and mobile home parks, as principal uses in light manufacturing districts. The trial court erred, therefore, in affirming the Board's order directing the issuance of a permit for construction of Shaw's proposed mobile home park.

For this error, the judgment of the trial court will be reversed, the order of the Board annulled, Shaw's "Request for Interpretation" dismissed, and final judgment entered in favor of the City.

*Reversed and final judgment.*