OPINION OF THE COURT
George B. Ceresia, Jr., J.
The infant plaintiffs have allegedly suffered injury by reason of ingestion of lead paint at two apartments located in the City *442 of Albany. Plaintiffs occupied. 630 Clinton Avenue from June 1990 to December 1991, and occupied 667 Clinton Avenue from December 1991 to December 1992. They have brought action against the owners of the apartments and Albany County. With respect to the liability of the County of Albany, it is alleged that said defendant was negligent in monitoring lead paint abatement at the apartments. The County has made a motion for summary judgment on grounds that: (1) no private cause of action exists as against the County of Albany; (2) no special relationship existed between the plaintiffs and the County of Albany; and (3) the County was not negligent in carrying out its statutorily imposed duties. Plaintiffs have made a cross motion for summary judgment dismissing four of defendant’s affirmative defenses.
Addressing first the issue of common-law tort liability, it is well settled that a municipality will not be held liable for injuries resulting from negligence in the performance of a governmental function, including the provision of governmental protection, unless it can be shown that a "special relationship” had been created between the municipality and the claimant (see, Cuffy v City of New York, 69 NY2d 255, 260; Boland v State of New York, 218 AD2d 235, 240; Melanson v State of New York, 215 AD2d 43, 45, lv denied 87 NY2d 810; Pike v State of New York, 214 AD2d 934, 935, appeal dismissed and lv denied 86 NY2d 811; Mohamed v Town of N. Greenbush, 229 AD2d 820, 821 [3d Dept 1996]). In order to establish a special relationship, the following factors must be present: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking (Cuffy v City of New York, supra, at 260).
In Bargy v Sienkiewicz (207 AD2d 606 [3d Dept 1994]), a case involving lead poisoning of infants, the Appellate Division commented that “ [b]y recommending the removal of the infants during the abatements and keeping plaintiff apprized of the progress of each abatement, the County, contrary to its argument, may have voluntarily assumed a particular duty to use due care for the benefit of the infants * * * to protect them from lead poisoning” (id,, at 609). The Court noted that plaintiff *443 had claimed that she vacated the apartment each time she was advised by the County inspector that he had found a lead hazard, and thereafter stayed in contact with him until she obtained his approval to return. The Court found that there was a triable issue with regard to whether the County assumed a particular duty of care towards the plaintiff and her children; and that the plaintiff relied upon the assumption of such a duty.
In this instance, there is evidence in the record of numerous contacts between employees of Albany County and the plaintiffs during the relevant period of time. There is evidence in plaintiff’s pretrial deposition and her supporting affidavit that Mr. Adey, a public health technician of the Albany County Department of Health, advised Margaret Cardona during 1991 that it was okay for her and her children to continue to reside at 630 Clinton Avenue. There is evidence that Mr. Adey loaned a vacuum cleaner to plaintiff for approximately two weeks and instructed her to vacuum floors and windowsills; and that Mr. Adey advised plaintiff that she could remediate the lead paint hazard herself. With respect to the latter advice, Mr. Adey allegedly gave plaintiff instructions with regard to how to chip off loose paint and then paint over areas where the old paint had been removed. Throughout this period of time, Mrs. Car-dona was aware that Albany County Health Department personnel were monitoring the levels of lead in her children’s blood;[1] that Mr. Adey was regularly inspecting the apartment; and that Mr. Adey had been attempting to secure the cooperation of the landlord to remedy the lead paint hazard. In the Court’s view this evidence — particularly plaintiff’s assertion that Mr. Adey had indicated that it was safe for plaintiffs to remain in the apartment — are supportive of plaintiffs’ claim that Albany County voluntarily established a special relationship with plaintiffs (see, Bargy v Sienkiewicz, supra).
The Court finds that the foregoing is sufficient to establish a triable issue that Albany County, through its actions, assumed an affirmative duty to act on behalf of the plaintiff's; that there was direct contact between Albany County’s agents and the plaintiffs; and that the plaintiff's justifiably relied upon the ac *444 tions and guidance provided by Albany County. It is not controverted that Albany County’s employees were aware that inaction could lead to harm. The Court concludes that the motion for summary judgment, as it relates to the issue of a special relationship between plaintiffs and defendant, must be denied.
As noted, defendants advance a second argument with respect to the viability of plaintiffs’ cause of action, that is, that plaintiffs do not possess a private statutory right of action under the Public Health Law. In Uhr v East Greenbush Cent. School Dist. (94 NY2d 32 [1999]) the Court of Appeals reaffirmed the three-prong test articulated in Sheehy v Big Flats Community Day (73 NY2d 629): “(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme” (id., at 38). In the Court’s view, as was the case in Uhr, it is arguable that the instant situation satisfies the first two prongs. As to the third prong, the Court of Appeals noted that in order to imply such a right of action, there must be “clear evidence” of the State Legislature’s willingness to expose the governmental entity to liability that it might otherwise not incur (see, id., at 42). The Court has reviewed Public Health Law article 13, title X, as well as the legislative Bill Jacket and discerns no evidence supportive of the Legislature’s willingness to expose a local municipality, including a county, to liability. Under these circumstances, the Court finds that a private right of action to enforce Public Health Law article 13, title X is inconsistent with the legislative scheme and therefore cannot be fairly implied (see, id.).
Notably, the Court of Appeals in Uhr (supra) was careful to differentiate between a cause of action against a municipality in common-law negligence predicated upon a special duty, and a private statutory right of action (see, id.). Thus, the lack of merit of the latter has no bearing on the viability of the former.
With respect to the issue of whether or not the County may have been negligent in its supervision of the lead paint abatement process, focusing first on 630 Clinton Avenue, the Court is of the view that there are triable issues of fact. There is evidence that the County granted the landlord of 630 Clinton Avenue multiple extensions between December 1990 and February 1991 to complete the abatement process even though *445 the landlord in many instances had done little to remediate the lead hazard problem, and failed to submit a written request for an extension. In addition, although the lead paint hazard was found to have been abated in February 1991, an inspection of the premises some four months later, on June 18, 1991, revealed many of the very same areas to be hazardous.[2] From June 1991 to early September 1991 the landlord did little to abate the hazard. During the same period the plaintiffs were never directed to depart the residence, despite the fact that the infant plaintiffs continued to have elevated levels of lead in their blood.
With regard to 667 Clinton Avenue the Court notes that plaintiffs’ own papers indicate that the defendant inspected the second floor apartment on February 26, 1992 and found lead hazards in the middle bedroom window; and that the County inspector found the hazard to have been abated on March 4, 1992. There is no specific factual indication with regard to how or in what manner defendant was negligent in the supervision of the lead abatement process of 667 Clinton Avenue. There being no triable issue of fact, the Court concludes that plaintiffs’ claim of negligence with respect to the lead abatement of 667 Clinton Avenue must be dismissed.
Turning to plaintiffs’ cross motion, defendant raises a threshold issue that the cross motion is untimely under the Court’s most recent scheduling order. It is asserted that the cross motion dated April 27, 2001 violates that portion of the order dated December 26, 2000, which extended the time for making a dispositive motion to January 22, 2001. The Court is mindful that “[CPLR 3212 (a)] does not provide a safe haven for frivolous or meritless lawsuits” (Rossi v Arnot Ogden Med. Ctr., 252 AD2d 778, 779 [3d Dept 1998]). The Court finds that in the absence of a demonstration by the defendant of prejudice, and in the interest of judicial economy, the Court should proceed to entertain the cross motion (see, Machac v Anderson, 261 AD2d 811 [3d Dept 1999]).
With respect to defendant’s first affirmative defense (that plaintiffs’ injuries were caused in whole or in part by plaintiffs’ culpable conduct), the Court must first note that Joshua Car-dona was born on April 21, 1987 and Marjorie Cardona was born on August 21, 1988. It has been held that a child four *446 years of age or younger is non sui juris (see, Galvin v Cosico, 90 AD2d 656 [3d Dept 1982]). Moreover, just as a five-year-old child may not be charged with a knowledge and understanding of traffic regulations (see, Dimino v Burriesci, 125 AD2d 361 [2d Dept 1986]; Avram v Haddad, 88 AD2d 942 [2d Dept 1982]), it is the Court’s view that the infant plaintiffs may not be charged with knowledge and understanding of the dangers of lead paint consumption (and/or the dangers of living in a lead-contaminated environment). The Court finds, as a matter of law, that the infant plaintiffs cannot be deemed to have engaged in any form of culpable conduct which contributed to their injuries.
The alleged culpable conduct of Margaret Cardona requires closer scrutiny. Plaintiffs emphasize that under General Obligations Law § 3-111 the contributory negligence of a parent may not be imputed to an infant. In Holodook v Spencer (36 NY2d 35 [1974]) the Court of Appeals held that a parent’s negligent failure to supervise a child does not generally constitute a tort actionable by the child. Holodook involved a situation where a four-year-old boy was struck by an automobile. The boy had allegedly darted out from between two cars. The defendant’s answer contained a counterclaim alleging, inter alia, that the father had failed to properly supervise his son at the time of the accident. Defendant commenced a third-party action against the boy’s mother on a similar theory. The Court found that the absence of the existence of a primary cause of action on behalf of the boy against his parents for damages necessarily defeated any secondary cause of action for contribution (see, id., at 51). In Nolechek v Gesuale (46 NY2d 332 [1978]), the Court of Appeals held that parents may owe some duty to third parties to protect against their children’s improvident use of a dangerous instrument. The Nolechek case involved a situation where a father sued various defendants for the wrongful death of his son, who died in a motorcycle accident. The Court permitted a claim for contribution against the father by reason that his son was a 16 year old who did not possess a valid operator’s license. The motorcycle his son was operating was neither registered nor inspected. In addition, his son was blind in one eye, and vision impaired in the other. The Court stressed the foreseeable nature of an accident under such circumstances. LaTorre v Genesee Mgt. (90 NY2d 576 [1997]) involved an incident at a shopping mall where a 20-year-old young man was involved in an altercation with an arcade manager. The man sued the shopping mall for his *447 personal injuries. The shopping mall brought a third-party action against the man’s mother for indemnification and contribution on a theory of lack of parental supervision. The Court of Appeals found the claim of negligent supervision to be nonactionable and affirmed dismissal of the third-party complaint.
In the Court’s view, all of the foregoing cases are distinguishable in that there was an affirmative claim for damages and/or contribution being made against the parent. This is not the case here. A review of the complaint reveals that plaintiff has only brought action against the defendant on behalf of her children for their personal injuries. Defendant’s answer, although containing a number of affirmative defenses, does not include a counterclaim against Margaret Cardona. Under the mandate of General Obligations Law § 3-111 the Court concludes that defendant’s first affirmative defense has no merit.
The Court concludes that defendant’s first affirmative defense must be dismissed.
Turning to defendant’s second affirmative defense, assumption of risk, plaintiff points out that in her demand for a bill of particulars, she requested that the defendant particularize the specific acts or omissions constituting the assumption of risk attributable to plaintiff. Defendant’s bill of particulars recited the following in response: “Defendant does not possess sufficient information to form a detailed response to this demand at this time and will supplement this response upon receipt of relevant and further information, including discovery and the depositions of the parties.” There is no showing that the relevant portion of the bill of particulars has been amended or supplemented. Apart from the foregoing, with reference to the infant plaintiffs, it has been held that, as a matter of law, the doctrine of assumption of risk, which contemplates the voluntary assumption of fully appreciated, “perfectly obvious” risks (Morgan v State of New York, 90 NY2d 471, 484), can have no application to a six year old (see, Roberts v New York City Hous. Auth., 257 AD2d 550 [1st Dept 1999]; Smith v Sapienza, 115 AD2d 723 [2d Dept 1985]). The Court finds that the affirmative defense must be dismissed.
Defendant’s ninth affirmative defense alleges that plaintiffs have failed to mitigate their damages. The Court is of the view that the infant plaintiffs, being non sui juris, were, as a matter of law, unable to mitigate their damages. To the extent that the affirmative defense relies upon their mother’s alleged failure to mitigate, the Court finds that the defense is, *448 in reality, an attempt to impute Margaret Cardona’s contributory negligence (in the form of her failure to take adequate protective measures to shield her children from lead paint exposure) to the infant plaintiffs. This, as noted, would contravene General Obligations Law § 3-111. The Court concludes that defendant’s ninth affirmative defense must be dismissed.
Defendant’s twelfth affirmative defense alleges that the complaint fails to state a cause of action. The Court notes that the Appellate Division, Third Department, has taken the position that this defense is harmless surplusage and a motion to strike it should be denied as unnecessary (see, Pump v Anchor Motor Frgt., 138 AD2d 849, 851 [3d Dept 1988]; Schmidt’s Wholesale v Miller & Lehman Constr., 173 AD2d 1004, 1005 [3d Dept 1991]; Dubois v Vanderwalker, 245 AD2d 758, 760 [3d Dept 1997]). The Court will therefore deny that portion of plaintiffs’ cross motion to dismiss defendant’s twelfth affirmative defense.
In summary, the Court concludes that defendant’s motion for summary judgment should be denied as it relates to a cause of action in negligence predicated on violation of a special duty, except as it relates to lead abatement at 667 Clinton Avenue, as to which the complaint should be dismissed. The Court concludes that the motion should be granted with respect to any cause of action purporting to be a private right of action arising under the Public Health Law. Plaintiffs’ cross motion is granted with respect to defendant’s first, second and ninth affirmative defenses, and denied with respect to defendant’s twelfth affirmative defense.[3]

. Although, as pointed out by the defendant, Mrs. Cardona did testify at her pretrial deposition that she could not remember whether a public health nurse had come to her home, she was able to testify to specific levels of lead in her children’s Hood. With respect to the number of times that her children had been tested for lead, while she did not know the exact number, she testified that it was “many times.

. The Court is mindful of the contentions of defendant’s expert that such conditions could arise at any time, even right after a lead abatement project had been completed — for example, where physical damage to the apartment occurs, resulting in a new lead paint hazard.

. Defendant has objected to the Court’s consideration of the report of Dr. Joel Redfield, Ph D and the report of Robert Karp, M. D. Defendant maintains that these reports were not timely disclosed under CPLR 3121 and Uniform Rules for Trial Courts (22 NYCRR) § 202.17 (c). The Court notes that it ruled upon this issue, denying defendant’s motion for an order of preclusion with respect to these reports, in a decision-order dated January 10, 2001. In the Court’s view that determination is now law of the case.