PRESENT:  All the Justices

HANNAH LEIGH EVANS, AN INFANT, WHO SUES
BY HER MOTHER, NATURAL GUARDIAN AND NEXT
FRIEND, CYNTHIA KAY STEVENS

                                        OPINION BY
v.        Record No. 091469     JUSTICE DONALD W. LEMONS
                                        June 10, 2010
BILLY BRADLEY EVANS, II

            FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                   James W. Updike, Jr., Judge

     In this appeal, we consider whether the trial court erred

when it sustained the demurrer of Billy Bradley Evans, II

("Evans") to the amended complaint of Hannah Leigh Evans

("Hannah").[1]

                I.  Facts and Proceedings Below

     Hannah, an infant suing by her mother, filed an amended

complaint against Evans, her father, which alleged that Evans

placed Hannah, then four years old, "in a [portable] foam seat

in the floorboard of a 1972 [pickup] truck" he was operating.

The truck was involved in a head-on collision with an

automobile operated by Caleb Justin Jarman, which caused the

truck to travel off the roadway and hit a fence.

---

[1] The intra-family immunity rule is subject to exception
when an action is brought by a child against a parent for
injuries sustained in a motor vehicle accident.  Pavlick v.
Pavlick, 254 Va. 176, 181, 491 S.E.2d 602, 604 (1997) (citing
Smith v. Kauffman, 212 Va. 181, 186, 183 S.E.2d 190, 194
(1971)).  Additionally, this case does not present a claim by a
parent for medical expenses.  See Code § 8.01-36.

Hannah alleged in the amended complaint that due to her father's failure to secure Hannah in the vehicle, she was "violently thrown about in the undercarriage and cab area" of the truck.  As a result, Hannah sustained numerous injuries including, but not limited to:  multiple facial contusions, a skull fracture, cerebral edema and subarachnoid hemorrhage of the right frontal lobe, a ruptured bladder, a left acetabular fracture, and an inferior pubic rami fracture.  Because of the acquired brain injury and the seriousness of her other injuries, Hannah was subjected to several months of hospitalization and rehabilitation.

Hannah alleged that Evans owed her a duty of care both as the operator of the vehicle and as her father.  Notwithstanding this duty, Hannah alleged that Evans "carelessly, recklessly, willfully, wantonly, grossly, negligently and grossly negligently, permitted" her to be left in such an unsafe and unreasonably dangerous seating arrangement.  Hannah asserted that Evans' alleged negligence was the direct and proximate cause of her serious and permanent physical and psychological injuries, and she sought $100,000 in "compensatory and/or punitive damages."

Hannah's amended complaint contained no reference to Code § 46.2-1095(A), which requires that children "up to age eight" be placed in a child restraint device when traveling in a motor

vehicle on the highways of Virginia.  Rather, the amended

complaint focused on other aspects of Evans' conduct.  Hannah

alleged that Evans was "negligent and grossly negligent" when

he:

> A.  Placed [Hannah] in a foam seat in an area of a 33-year-old truck which was as inherently dangerous as having placed her in the cargo bed of the truck.
>
> B.  Placed [Hannah] in a loose seat on the floorboard where said infant was surrounded by sharp objects and hard objects in the form of undercarriage structure, wires and front seat support metal rods and metal bars[.]
>
> C.  Placed [Hannah] on the floorboard of the truck.
>
> D.  Placed [Hannah] in an extreme injury-risk location as described above while knowing that such placement would be catastrophic to the infant should any foreseeable motor vehicle accident occur.
>
> E.  Ignored his duty of care to assure that his infant passenger was . . . safe and free from being tossed about in the confined area between the truck floorboard and the underside of the dashboard.

In his responsive pleadings, Evans demurred to Hannah's

amended complaint, arguing that Code § 46.2-1095(C) barred

Hannah's claims, and that she failed to state a claim upon

which relief could be granted.  Code § 46.2-1095 (C) states in

pertinent part:  "A violation of this section shall not

3

constitute negligence." Evans also denied that he was liable to Hannah or that he breached any legal duty owing to her.

Following briefing by the parties, the trial court held a hearing at which it acknowledged that Hannah was asserting a common law negligence claim and not a claim of negligence for Evans' alleged violation of Code § 46.2-1095. However, the trial court stated,

> [the] statutory duty [to secure a child in a vehicle] is so inextricably intertwined with any common law duty of care, that in my view it would be impossible to try this case without [the statute] somehow coming up either explicitly, or even the jury is thinking about it, that reference would be made to this statute.

The trial court reasoned that if counsel for Hannah argued that Evans failed to exercise reasonable care by placing Hannah on the floor of the truck, the jury would accept that argument because it would know that Evans "is required by statute to put that child in a child restraint seat and he didn't do it."

The trial court concluded that "the General Assembly exerted a whole lot of effort here to say this kind of conduct . . . is not going to be the basis for a civil action in this Commonwealth." Accordingly, the trial court sustained Evans' demurrer to Hannah's amended complaint and dismissed the complaint with prejudice.

4

Hannah timely filed her notice of appeal, and we granted an appeal on the following assignments of error:

1.    The Circuit Court erred because it failed to view the Amended Complaint in the light most favorable to the Plaintiff and, in doing so, failed to recognize that a jury could reasonably find that the placement of a four-year old child on the floorboard of a 1972 truck was in and of itself a separate and identifiable act of negligence, without reference to the statute.

2.    The Circuit Court erred in failing to recognize that Va. Code § 46.2-1095(C) refers only to "negligence" and does [sic] regulate claims for "gross negligence" which[] are distinct and separate causes of action, commonly referred to as claims for punitive damages.

3.    The Circuit Court erred when it construed Va. Code § 46.2-1095(C) other than according to its plain meaning and in such a way as to create the absurd result of immunizing a wrongdoer for any degree of negligence in transporting a child in a motor vehicle.

4.    The Circuit Court erred in failing to construe Va. Code §§ 46.2-1095 and 46.2-1098 conjunctively, given the language of Va. Code § 46.2-109[8] which specifically states in part that "nor shall violation of this article constitute a defense to any claim for personal injuries to a child or the recovery of medical expenses for injuries sustained in any motor vehicle accident."

## II.  Analysis

### A.  Standard of Review

As we previously have stated,

> "[a] demurrer admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations.  A demurrer does not, however, admit the correctness of the pleader's conclusions of law."  Yuzefovsky

5

> v. St. John's Wood Apts., 261 Va. 97, 102,
> 540 S.E.2d 134, 136-37 (2001) (internal
> citation omitted). Accordingly, we will
> consider the facts stated, and those
> reasonably and fairly implied and inferred,
> in the [complaint] in a light most
> favorable to the plaintiff, but we will
> review the sufficiency of the legal
> conclusions ascribed to those facts de
> novo.

Taboada v. Daly Seven, Inc., 271 Va. 313, 317-18, 626 S.E.2d 428, 429 (2006), aff'd on reh'g, 273 Va. 269, 270, 641 S.E.2d 68, 68 (2007). In this appeal, we interpret Code §§ 46.2-1095 and 46.2-1098.

> [A]n issue of statutory interpretation is a
> pure question of law which we review de
> novo. When the language of a statute is
> unambiguous, we are bound by the plain
> meaning of that language. Furthermore, we
> must give effect to the legislature's
> intention as expressed by the language used
> unless a literal interpretation of the
> language would result in a manifest
> absurdity. If a statute is subject to more
> than one interpretation, we must apply the
> interpretation that will carry out the
> legislative intent behind the statute.

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted). Furthermore, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998).

6

B.    Code §§ 46.2-1095 and 46.2-1098

The dispositive issue in this case is whether Code §§ 46.2-1095 and 46.2-1098 preclude any cause of action for negligence when an injured child alleges that the adult responsible for her safety breached the common law duty of care by failing to secure the child in a safety seat.

Code § 46.2-1095(A) provides in pertinent part that any person who drives on the highways of Virginia "shall ensure that any child, up to age eight, whom he transports therein is provided with and properly secured in a child restraint device of a type which meets the standards adopted by the United States Department of Transportation."  Code § 46.2-1095(C) provides in pertinent part, "[a] violation of this section shall not constitute negligence, be considered in mitigation of damages of whatever nature, be admissible in evidence or be the subject of comment by counsel in any action for the recovery of damages in a civil action."  Code § 46.2-1098 provides in pertinent part, "[v]iolations of this article shall not constitute negligence per se; nor shall violation of this article constitute a defense to any claim for personal injuries to a child or recovery of medical expenses for injuries

sustained in any motor vehicle accident."[2]

Our review of these statutes is guided by well-established canons of construction.

> The General Assembly has proclaimed, "The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force . . . and be the rule of decision, except as altered by the General Assembly." Code § 1-200. When construing a statute in derogation of the common law, we apply several established principles. "[A] statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested." Herndon v. St. Mary's Hosp., Inc., 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003). "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." Chesapeake & Ohio Ry. Co. v. Kinzer, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965). Accordingly, "[a] statutory change in the common law is limited to that which is expressly stated in the statute or necessarily implied by its language because there is a presumption that no change was intended." Mitchem v. Counts, 259 Va. 179, 186, 523 S.E.2d 246, 250 (2000). "When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to

---

[2] Both Code §§ 46.2-1095 and 46.2-1098 are codified in Article 13, which is entitled "Child Restraints." Because they clearly address the same subject matter, we construe them together under the "in pari materia" canon of construction. See e.g. USAA Cas. Ins. Co. v. Hertz Corp., 265 Va. 450, 457, 578 S.E.2d 775, 778 (2003) (construing statutes appearing in Title 46.2 and dealing with insurance requirements for motor vehicles); Taylor v. Shaw & Cannon Co., 236 Va. 15, 19, 372 S.E.2d 128, 131 (1988) (statutes are "read . . . in pari materia since they relate to the same subject").

the rule." Boyd [v. Commonwealth, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988)].

Isbell v. Commercial Investment Assocs., Inc., 273 Va. 605, 613-14, 644 S.E.2d 72, 75 (2007) (some internal citations omitted).

"The doctrine of negligence per se represents the adoption of 'the requirements of a legislative enactment as the standard of conduct of a reasonable [person].' " McGuire v. Hodges, 273 Va. 199, 206, 639 S.E.2d 284, 288 (2007) (quoting Butler v. Frieden, 208 Va. 352, 353, 158 S.E.2d 121, 122 (1967)). "A party relying on negligence per se does not need to establish common law negligence." Id. These principles provide a clear distinction between statutory and common law negligence. In Code § 46.2-1098, the General Assembly plainly indicated that it was not creating a statutory standard of care through its enactment of Code § 46.2-1095. Accordingly, a plaintiff may not rely on an alleged or admitted violation of Code § 46.2-1095 to prove her claim of negligence per se.

However, the question remains whether the General Assembly intended for Code §§ 46.2-1095 and 46.2-1098 to abrogate a cause of action based upon common law negligence when the facts involve the failure to secure a child in a child restraint device. Because "[a] statutory change in the common law is limited to that which is expressly stated in the statute or

9

necessarily implied by its language," Isbell, 273 Va. at 613-14, 644 S.E.2d at 75, we hold that the legislature did not intend to eliminate common law causes of action arising from injuries sustained by a child in a motor vehicle accident.

The language of Code § 46.2-1095(C) states in part, "[a] violation of this section shall not constitute negligence." The language of Code § 46.2-1098 states in part, "[v]iolations of this article shall not constitute negligence per se." Construing the statutory scheme as a whole, we hold that the "negligence" referred to in Code § 46.2-1095(C) is the same per se negligence referenced in Code § 46.2-1098. See e.g., City of Lynchburg v. English Constr. Co., 277 Va. 574, 584, 675 S.E.2d 197, 202 (2009) (construing statutes in Title 58.1 and explaining that "[i]t is the duty of the courts to construe statutory enactments so as to avoid repugnance and conflict between them and, if possible, to give force and effect to each of them") (citing Sexton v. Cornett, 271 Va. 251, 257, 623 S.E.2d 898, 901 (2006)); Alston v. Commonwealth, 274 Va. 759, 769, 652 S.E.2d 456, 462 (2007) (construing statutes in Title 19.2 and explaining that "[i]t is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished") (quoting Prillaman v. Commonwealth, 199 Va. 401, 406, 100 S.E.2d 4, 7 (1957) (internal quotation marks

omitted)).  Consistent with Code § 1-200 and our case law, we conclude that the General Assembly intended preclusion of a per se negligence action based upon Code §§ 46.2-1095 and 46.2-1098, but did not abrogate a common law action for negligence.

The parties engage in much discussion regarding the meaning of the word "violation" in the statutes.  Hannah maintains that the term refers to a formal adjudication under the statute.  Evans maintains that it refers to a factual basis that could result in a formal adjudication.  The resolution of that question is not the dispositive issue in this case.  We hold that, read together, Code §§ 46.2-1095 and 46.2-1098:  (i) preclude a cause of action based upon negligence per se; and (ii) preclude any mention of the statutory provisions by the parties at trial for any reason.[3]

Upon remand, the trial court should be mindful that in a common law cause of action for negligence, a child of four is not legally capable of contributory negligence.  See Grant v. Mays, 204 Va. 41, 44, 129 S.E.2d 10, 12 (1963); Morris v. Peyton, 148 Va. 812, 821, 139 S.E. 500, 502-03 (1927).  Also, in a suit by an infant to recover damages for personal injury, the negligence of a parent will not be imputed to his infant

---

[3] Because we hold today that Hannah's common law cause of action survives, it is not necessary for us to reach the remaining assignments of error.

11

child.  Tugman v. Riverside & Dan River Cotton Mills, Inc., 144 Va. 473, 481, 132 S.E.2d 179, 181 (1926).  Finally, "[w]e have held that a plaintiff has a duty to mitigate [her] damages." Sawyer v. Comerci, 264 Va. 68, 77, 563 S.E.2d 748, 754 (2002). "Generally, whether a plaintiff acted reasonably to minimize his damage is a question for the jury."  Id.  However, in accordance with other jurisdictions, we hold that a four-year old child is unable, as a matter of law, to mitigate her damages.  See Francis v. Dahl, 107 P.3d 1171, 1174 (Colo. Ct. App. 2005); accord Cardona v. County of Albany, 728 N.Y.S.2d 355, 362 (N.Y. Sup. Ct. 2001) ("the infant plaintiffs, being non sui juris, were, as a matter of law, unable to mitigate their damages").

### III.  Conclusion

For the reasons stated herein, we will reverse the judgment of the Circuit Court of Bedford County and remand the case to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

JUSTICE KINSER, dissenting.

Today, the majority holds that the term "negligence" used by the General Assembly in Code § 46.2-1095(C) "is the same per se negligence" as the General Assembly utilized in Code § 46.2-1098.  Because those two terms have distinct legal meanings and

12

because the majority ignores important principles of statutory construction, I respectfully dissent.

The majority does not find that either of these statutes is ambiguous, nor do I. In construing a clear and unambiguous statute, "this Court looks no further than the plain meaning of the statute's words." Gray v. Rhoads, 268 Va. 81, 86, 597 S.E.2d 93, 96 (2004). Furthermore, "[c]ourts cannot 'add language to the statute the General Assembly has not seen fit to include.' " Jackson v. Fidelity & Deposit Co. of Maryland, 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) (quoting Holsapple v. Commonwealth, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003)). "[N]or are they permitted to accomplish the same result by judicial interpretation." Burlile v. Commonwealth, 261 Va. 501, 511, 544 S.E.2d 360, 365 (2001) (citation and internal quotation marks omitted).

Moreover, "[w]hen the General Assembly uses two different terms in the same act, those terms are presumed to have distinct and different meanings." Industrial Dev. Auth. v. Board of Supervisors, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002) (emphasis added); accord Shelor Motor Co. v. Miller, 261 Va. 473, 480, 544 S.E.2d 345, 349 (2001). We must "presume that the 'legislature chose, with care, the words it used when it enacted the . . . statute.' " Jackson, 269 Va. at 313, 608

S.E.2d at 906 (quoting Simon v. Forer, 265 Va. 483, 490, 578 S.E.2d 792, 796 (2003)).

There can be no doubt that the words "negligence" and "negligence per se" are terms of art and have distinct legal meanings. This Court has defined "ordinary or simple negligence as the failure to use 'that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another.' "[1] Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984) (quoting Perlin v. Chappell, 198 Va. 861, 864, 96 S.E.2d 805, 808 (1957)). To establish negligence, a plaintiff must "show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003).

---

[1] We have defined the term "gross negligence" as "that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." Ferguson v. Ferguson, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971) (emphasis omitted). "Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984) (citing Friedman v. Jordan, 166 Va. 65, 68, 184 S.E. 186, 187 (1936)).

14

In contrast, "[t]he doctrine of negligence per se represents the adoption of 'the requirements of a legislative enactment as the standard of conduct of a reasonable [person].' " McGuire v. Hodges, 273 Va. 199, 206, 639 S.E.2d 284, 288 (2007) (quoting Butler v. Frieden, 208 Va. 352, 353, 158 S.E.2d 121, 122 (1967)).

> A party relying on negligence per se does not need to establish common law negligence provided the proponent produces evidence supporting a determination that the opposing party violated a statute enacted for public safety, that the proponent belongs to the class of persons for whose benefit the statute was enacted and the harm suffered was of the type against which the statute was designed to protect, and that the statutory violation was a proximate cause of the injury.

Id. (citing Halterman v. Radisson Hotel Corp., 259 Va. 171, 176-77, 523 S.E.2d 823, 825 (2000)).

Despite this obvious distinction between the terms "negligence" and "negligence per se" and the statutory construction principle that when the General Assembly uses two different terms in the same act, the terms are presumed to have distinct and different meanings, the majority concludes that the General Assembly did not mean what it said by using the term "negligence" in Code § 46.2-1095(C). When the General Assembly first enacted legislation requiring the use of child restraint devices while transporting children in motor vehicles, see former Code § 46.1-314.2, it did not include the

15

term "negligence" in the statute.  1982 Acts ch. 634.  However, in the same Act, the General Assembly enacted former Code § 46.1-314.5(B), which did contain a reference to negligence per se: "Violations of the provisions of this article shall not constitute negligence per se; nor shall violation of this article constitute a defense to any claim for personal injuries to a child or recovery of medical expenses for injuries sustained in any motor vehicle accident."  1982 Acts ch. 634. Virtually the same language is now set forth in Code § 46.2-1098.

When enacted in 1982, former Code §§ 46.1-314.2 and -314.5 were part of Article 9.1 in Chapter 4 of Title 46.1 of the Code.  1982 Acts ch. 634.  Current Code §§ 46.2-1095 and -1098 are included in Article 13 of Chapter 10 in Title 46.2.  Thus, since its creation, a violation of the statute requiring the use of child restraint devices could not constitute negligence per se.

In 1997, the General Assembly amended Code § 46.2-1095 and added the language now found in subsection C: "A violation of this section shall not constitute negligence, be considered in mitigation of damages of whatever nature, be admissible in evidence or be the subject of comment by counsel in any action for the recovery of damages in a civil action."  1997 Acts ch. 793.  Since it was already the case, pursuant to Code § 46.2-

1098, that a violation of Code § 46.2-1095 could not constitute negligence per se, it is apparent that the General Assembly intended what it enacted and did not use the term "negligence" to mean "negligence per se."

Thus, I cannot adopt the view of the majority. To do so renders the 1997 amendment to Code § 46.2-1095 entirely superfluous and repetitious of what Code § 46.2-1098 already stated: a violation of Code § 46.2-1095 could not constitute negligence per se. See Sansom v. Board of Supervisors, 257 Va. 589, 595, 514 S.E.2d 345, 349 (1999) (To interpret the phrase "substantial surface drainage course" and "stream" to denote the same type of topographical feature would "violate the settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary.") (internal quotation marks and citation omitted). By its holding today, the majority presumes the General Assembly did not "[choose], with care, the words it used when it enacted [Code § 46.2-1095(C)]." Simon, 265 Va. at 490, 578 S.E.2d at 796. I believe, however, that the General Assembly fully understands the significant legal difference between the terms "negligence" and "negligence per se." See Philip Morris USA Inc. v. Chesapeake Bay Found., Inc., 273 Va. 564, 576, 643 S.E.2d 219, 225 (2007) ("In interpreting a statute, we presume that the

17

General Assembly acted with full knowledge of the law in the area in which it dealt."). The numerous statutes in which these terms appear show that the General Assembly does not use them interchangeably. Compare Code §§ 29.1-748(C) (violation of section shall not constitute negligence), 46.2-334.01(E) (same), 46.2-335(E) (same), 46.2-906.1 (same), 46.2-915.1(D) (same), 46.2-915.2 (same), and 46.2-1094(D) (same), with Code §§ 19.2-392.02(G) (violation of section shall not constitute negligence per se), 29.1-749.3 (same), 32.1-111.3(B)(2), -111.3(C)(2) (same), 46.2-800.1(C) (same), 46.2-813 (same), 46.2-842.1 (same), 46.2-910(A) (same), 46.2-1030(D) (same), and 59.1-524 (same).

Despite the narrow issue before us, the majority concludes that the General Assembly "did not intend to eliminate common law causes of action arising from injuries sustained by a child in a motor vehicle accident." I agree. "[A] statutory provision will not be held to change the common law unless the legislative intent to do so is plainly manifested." Herndon v. St. Mary's Hosp., Inc., 266 Va. 472, 476, 587 S.E.2d 567, 569 (2003). But, the question is not whether the General Assembly intended to eliminate all causes of action for injuries sustained by children in motor vehicle accidents. Instead, the proper inquiry is whether the General Assembly intended to abrogate common law negligence causes of action premised on the

18

failure to secure a child in a child restraint system. I conclude that it did. What could be more plain, clear, and expressly stated than the language in Code § 46.2-1095(C): "[A] violation of this section [mandating use of child restraint devices] shall not constitute negligence"?[2] (Emphasis added.)

Under the majority's holding today, this infant, suing by her mother and next friend, can proceed with this common law negligence action against her father for injuries she allegedly sustained as a result of his failure to secure her in a child restraint device. She apparently can do so even though the father's failure to properly restrain his daughter, which violated Code § 46.2-1095(A), is not admissible in evidence under Code § 46.2-1095(C). Furthermore, under the terms of Code § 46.2-1098, a defendant sued by an infant's parent to recover medical expenses sustained as a result of a motor vehicle accident could not present a defense based on the conduct at issue. Thus, in my view, the majority disrupts a

_____

[2] Reading Code §§ 46.2-1095 and -1098 "in pari materia" does not lead to a different result. Related statutes are read "in pari materia in order to give, when possible, consistent meaning to the language used by the General Assembly." Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv., Inc., 271 Va. 304, 310-11, 626 S.E.2d 436, 439 (2006). I find nothing inconsistent about the General Assembly's use of the terms "negligence" and "negligence per se" in Code §§ 46.2-1095(C) and -1098, respectively.

previously consistent statutory scheme and reverses a policy decision made by the General Assembly.

Having concluded that the General Assembly meant what it stated in Code § 46.2-1095(C), I turn now to the question whether the circuit court erred in sustaining a demurrer to the amended complaint. As the majority notes, the infant, suing by her mother and next friend, alleged that her father placed her in a loose seat on the floorboard of a truck and by doing so, breached his duty of care to insure that his infant passenger was "safe and free from being tossed about in the confined area between the truck floorboard and the underside of the dashboard." There is no question that the alleged conduct violates Code § 46.2-1095(A), but the provisions of Code § 46.2-1095(C) clearly state that "[a] violation of this section shall not constitute negligence." Establishing the alleged facts at trial will necessarily implicate the father's failure to secure his daughter in a child restraint device. And, establishing that the father's alleged negligence was the proximate cause of his daughter's injuries will necessarily entail consideration as to whether the infant would have been injured less seriously, or not at all, if she had been properly restrained. Thus, I conclude that the circuit court did not err in sustaining the demurrer.

For these reasons, I would affirm the judgment of the circuit court and therefore respectfully dissent.

JUSTICE MIMS, concurring.

I concur with the majority opinion, which I join.  The majority and dissenting opinions thoroughly parse the language of Code §§ 46.2-1095 and 46.2-1098 in search of the elusive grail of legislative intent.  Yet the two opinions reach diametrically opposed conclusions.  The statutory language, together with the rather complex statutory history, has caused reasonable minds to differ.

I write to suggest that in choosing between these opposite reasonable conclusions, one should not miss the forest for the trees.[*]  Code § 46.2-1095 is both admirable and minimal.  Its purpose is admirable: to protect children on the highways of the Commonwealth by requiring that they be secured by age-appropriate safety restraints.  Yet its salutary effect is

---

[*] It is well-established that "we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result."  Wright v. Commonwealth, 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009).  However, "[t]he ultimate purpose of these rules is to ascertain the intention of the legislature, and every statute is to be read so as to promote the ability of the enactment to remedy the mischief at which it is directed."  USAA Casualty Ins. Co. v. Alexander, 248 Va. 185, 194, 445 S.E.2d 145, 150 (1994) (internal alterations and quotation marks omitted).

21

minimal due to its negligible sanction:  a $50 civil penalty with no demerit points and no imposition of court costs.

The General Assembly enacted a remedial statute whose sole purpose is to protect defenseless children who cannot protect themselves.  The majority opinion concludes that the General Assembly intended to add this minimal statutory protection to the existing common law tort remedy available to grievously injured children such as Hannah.  Therefore it holds that a violation of the statute does not bar a tort action; rather it merely may not be introduced as evidence in such action.

The dissenting opinion concludes that the General Assembly intended to replace entirely the tort remedy for those injured children.  Therefore, a guilty wrongdoer who pays his $50 fine is immune from any further consequence, while his injured child victim is left without the previously available redress for her grievous injuries.  I do not believe the General Assembly intended such an inequitable result when it enacted this remedial statute to protect the safety of children.