■ MYKELTI CUNNINGHAM, an Infant, by His Guardian, UTOPIA R. ROGERS, Appellant, v JOHN K. ANDERSON, Respondent. [925 NYS2d 693]—

McCarthy, J. Appeals (1) from an order of the Supreme Court (Connolly, J.), entered April 9, 2010 in Albany County, which, among other things, partially denied plaintiff's cross motion for, among other things, partial summary judgment, (2) from a judgment of said court, entered June 10, 2010 in Albany County, upon a verdict rendered in favor of defendant, and (3) from that part of an order of said court, entered November 30, 2010 in Albany County, which denied plaintiff's motion for, among other things, a new trial.

Defendant owned a building and rented an apartment in it to

---

plaintiff's family from 1990, before plaintiff's birth, until 1994, when plaintiff was just over two years old. In June 1993, plaintiff had elevated blood lead levels, which changed over time but generally continued to be elevated until after his family moved out of defendant's building. Plaintiff has since been diagnosed with attention deficit hyperactivity disorder (hereinafter ADHD), oppositional defiant disorder, a cognitive disorder and learning disabilities. Plaintiff commenced this action in 2008, alleging that defendant was negligent by failing to inspect and remove lead paint from the building, thereby causing injuries to plaintiff.

Defendant made a motion not relevant to this appeal, prompting plaintiff to cross move for, among other things, partial summary judgment on the issue of liability and to dismiss two of defendant's affirmative defenses. Supreme Court largely denied the cross motion, but the court did limit the defense of failure to mitigate damages. Plaintiff appeals from that order.[1]

After trial, the jury found that defendant received notice of the lead hazard and acted negligently, but that his negligence was not a substantial factor in causing plaintiff's injuries. Plaintiff moved to set aside the verdict and for a new trial due to alleged misconduct. Supreme Court, among other things, denied plaintiff's motions. Plaintiff appeals from the judgment rendered upon the jury's verdict and from that part of the order which denied his posttrial motion.

Questions of fact precluded Supreme Court from granting that part of plaintiff's cross motion seeking partial summary judgment on the issue of liability. A landlord's liability for injuries related to a defective condition including lead paint cannot be established without proof that the landlord had actual or constructive notice of the condition for a sufficient period of time such that the condition should have been corrected (see *Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 646 [1996]). In lead paint cases, notice can be established by proof "that the landlord (1) retained a right of entry to the premises and assumed a duty to make repairs, (2) knew that the apartment was constructed at a time before lead-based interior paint was banned, (3) was aware that paint was peeling on the premises,

---

1. Plaintiff's right to appeal the nonfinal order partially denying his cross motion terminated upon the entry of the final judgment (see *Matter of Aho*, 39 NY2d 241, 248 [1976]; *Matter of Granger Group v Town of Taghkanic*, 77 AD3d 1137, 1139 n 5 [2010], *lv denied* 16 NY3d 781 [2011]). Nevertheless, his appeal from the final judgment brings the issues raised on the appeal from this order up for review (see *Neissel v Rensselaer Polytechnic Inst.*, 54 AD3d 446, 449 n 3 [2008], *lv denied* 11 NY3d 716 [2009]).

(4) knew of the hazards of lead-based paint to young children and (5) knew that a young child lived in the apartment" (*Chapman v Silber*, 97 NY2d 9, 15 [2001]). Children ages six months to six years are most at risk for lead poisoning (*see* 10 NYCRR 67-1.2; *Matter of New York City Coalition to End Lead Poisoning v Vallone*, 100 NY2d 337, 342-343 [2003]). In his deposition testimony and affidavit, defendant asserted that he was aware of plaintiff's siblings who were over 10 years old, but that he was not aware that any younger children resided in the apartment. Regardless of whether the other factors for notice were established, this assertion created a question of fact as to whether defendant was on notice of the need to correct any lead paint problems in the apartment. Accordingly, Supreme Court correctly denied plaintiff's application for partial summary judgment.

Supreme Court properly denied that part of plaintiff's cross motion seeking to dismiss two affirmative defenses. Plaintiff bore the burden of establishing that the affirmative defenses were without merit as a matter of law (*see Galasso, Langione & Botter, LLP v Liotti*, 81 AD3d 880, 882 [2011]). Here, the court correctly limited the defense of failure to mitigate damages by precluding it for any time while plaintiff lived in the apartment, as he was too young to be responsible for his conduct at that time (*see M.F. v Delaney*, 37 AD3d 1103, 1104-1105 [2007]; *Cardona v County of Albany*, 188 Misc 2d 440, 445-446 [2001]). While the law may absolve very young children of all liability for their actions as a matter of law (*see M.F. v Delaney*, 37 AD3d at 1104-1105), we reject plaintiff's broad assertion that individuals less than 18 years of age can never be held legally responsible for their actions through defenses such as contributory negligence or failure to mitigate damages (*see Blitstein v Capital Dist. Transp. Auth.*, 81 AD2d 981 [1981]; *Finn v New York State Dept. of Mental Hygiene*, 49 AD2d 995, 995 [1975]; *Quinn v County of Sullivan*, 48 AD2d 965, 965 [1975]). Plaintiff's conduct when he was a preteen and teenager, including discontinuing prescribed medication and failing to attend school, may have constituted a failure to mitigate damages at a time when plaintiff could be held legally responsible for his actions. Thus, the court correctly limited that defense, rather than dismissing it entirely. The contributory negligence defense was similarly based on plaintiff's conduct; it was not based on his parents' negligent supervision of him, which would have rendered the defense improper (*see Cunningham v Anderson*, 66 AD3d 1207, 1208 [2009], *lv denied* 14 NY3d 710 [2010]; *Christopher M. v Pyle*, 34 AD3d 1286, 1287 [2006]). As plaintiff failed to establish the inapplicability of the defenses as a matter

of law, the court ruled correctly on that portion of his cross motion.

Supreme Court also properly denied the portion of plaintiff's cross motion seeking to preclude the report and testimony of defendant's expert neuropsychologist. Plaintiff argues that preclusion was required because the expert refused to allow counsel to be present during the expert's examination of plaintiff.[2] Counsel was familiar with the expert's procedures, as counsel encountered the same situation with the same expert in a prior case (see A.W. v County of Oneida, 34 AD3d 1236 [2006]). The court did not err in determining that, by failing to move for a protective order or seek guidance before the examination concerning counsel's ability to be present or observe it (see CPLR 3103 [a]), and only reserving his rights at the time of the examination but waiting until after the note of issue was filed to make the cross motion seeking relief, plaintiff waived his rights and was not entitled to preclusion (see Pendergast v Consolidated Rail Corp., 244 AD2d 868, 869 [1997]).

Addressing the judgment, plaintiff argues that once the jury found that defendant was negligent, it was required to also find that his negligence was a substantial factor in bringing about plaintiff's injuries. We disagree. Plaintiff requested the verdict sheet questions asking separately about negligence and causation, implying that they could be answered differently and were not intertwined. He did not object to the charge either before or after it was given to the jury, although Supreme Court provided him an opportunity to do so. Following the jury's verdict, plaintiff did not inform the court of any perceived inconsistency in the jury's answers to the questions posed. By failing to timely object and raise the issue prior to the jury being discharged, plaintiff failed to preserve this argument for our review (see Pipp v Guthrie Clinic, Ltd., 80 AD3d 1014, 1016 [2011]).

The jury's verdict was not against the weight of the evidence. Through documents and testimony from county health department officials and defendant himself, plaintiff established that the apartment that defendant rented to plaintiff's family had chipped lead paint at a time when plaintiff was a toddler, defendant had previously been cited for violating health regulations regarding lead paint in that building, he was aware that abated lead paint hazards can recur if the lead paint is not entirely removed and he did not regularly inspect his apartments for peeling or chipped paint. This evidence supports the jury's finding that defendant was negligent.

---

2. The expert allowed counsel to be present for the clinical interview, but excluded him while psychological testing was conducted.

Despite evidence that could support causation, including testimony from plaintiff's experts, defendant raised doubts about some of plaintiff's proof and presented his own proof. Defendant's evidence, including the testimony of his experts, disputed that plaintiff suffered from lead poisoning, that any lead poisoning was caused by paint, or that plaintiff's disorders and disabilities were caused by lead poisoning. The record did not include the laboratory results of plaintiff's blood lead levels, only a hearsay summary of those test results. The heading on the summary identified plaintiff as a female of unknown race, calling into question if the document was an accurate summary of plaintiff's results. Without proof that he had elevated blood lead levels, plaintiff could not prevail.[3] Additionally, all of the experts relied on the summary as representing the duration and peak of plaintiff's blood lead levels, rendering suspect the accuracy of their opinions if the underlying information and basis for their conclusions was incorrect.

Through health department records and testimony of a public health nurse, defendant presented proof that plaintiff put cigarette butts, newspapers and magazines in his mouth while he lived in defendant's apartment. Cigarettes and newspaper ink contained lead at that time, presenting the possibility that— assuming plaintiff did have elevated blood lead levels—the lead in his blood came from sources unrelated to defendant. Thus, despite defendant being negligent in the maintenance of the apartment, his actions may not have been responsible for plaintiff's injuries.

As for the effects of lead poisoning, the experts disagreed on several points. Plaintiff's experts linked his ADHD, oppositional defiant disorder, a cognitive disorder and learning disabilities to lead poisoning. Defendant's experts opined that ADHD is a congenital condition and there are no scientific studies proving that it is caused by lead exposure. They further opined that plaintiff's disorders and disabilities were caused by other factors, mainly social and environmental circumstances of his upbringing. Contrary to plaintiff's assertion that this was essentially an unwarranted attack on plaintiff based upon his race[4] and economic situation, or that these opinions were based on speculation, the

---

**3.** Plaintiff submitted copies of lab results with his posttrial motion. Upon realizing during trial that the actual results were not included in the medical records, plaintiff could have sought an adjournment to obtain those results, which had been subpoenaed. He did not, and cannot now rely on records that were not presented to the jury to attack the verdict.

**4.** Plaintiff's counsel first brought up the issue of race when questioning defendant's expert. The expert denied that race or race-related genetics were a factor, although genetics were relevant because a parent's intelligence and

experts referred to scientific studies and articles showing a link between socioeconomic factors and psychological development (*see Veloz v Refika Realty Co.*, 38 AD3d 299, 300 [2007], *lv denied* 9 NY3d 817 [2008]; *compare Juarez v Wavecrest Mgt. Team*, 88 NY2d at 648; *Bygrave v New York City Hous. Auth.*, 65 AD3d 842, 845-847 [2009]). Proof of plaintiff's social and family factors was presented through school and medical records, as well as testimony from his sister. The jury could rationally credit the testimony of defendant's experts and their opinion that any effects of lead poisoning only minimally affected plaintiff in relation to the other factors that were present, thereby finding that defendant's negligence was not a substantial factor in causing plaintiff's injuries (*see Avila v Robani Energy Inc.*, 12 AD3d 223, 223 [2004]; *cf. Veloz v Refika Realty Co.*, 38 AD3d at 300). Giving appropriate deference to the jury, we will not disturb its verdict.

Plaintiff did not object to the comments made by defense counsel during his opening statement and summation, rendering any challenge to those comments unpreserved (*see Simpson v K-Mart Corp.*, 245 AD2d 991, 993 [1997], *lv denied* 91 NY2d 813 [1998]). Plaintiff's remaining arguments on his posttrial motion, to the extent that they were preserved, either presented new evidence that should not be considered on such a motion or simply rehashed arguments that had previously been raised and ruled upon during trial. Accordingly, Supreme Court did not err in denying the motion.

Spain, J.P., Lahtinen, Kavanagh and Garry, JJ., concur. Ordered that the appeal from the order entered April 9, 2010 is dismissed. Ordered that the order entered November 30, 2010 and the judgment are affirmed, with costs.

mental disorders could affect the child's innate abilities and opportunities in life.